STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 69-5-11 Vtec |

| | |
|---|---|
| Ridgetop/Highridge PUD | DECISION ON MOTION |

**Decision on Cross Motions for Summary Judgment**

The matter before the Court concerns Killington Pico Ski Resort Partners, LLC's planned unit development (PUD) renewal application 11-005 (11-005 Application), submitted to the Town of Killington Planning Commission on March 11, 2011. Killington Pico Ski Resort Partners, LLC (KPSRP or Applicant), through the 11-005 Application, seeks renewal of its 06-098 PUD permit for the Ridgetop/Highridge PUD (the Project) that expired in March of 2011. After a public hearing on March 23, 2011, the Planning Commission approved the 11-005 Application in April of 2011. Appellants, the Highridge Condominium Owners Association (Association), appealed the Planning Commission's decision to this Court on May 9, 2011.[1] In their Statement of Questions Appellants raise three questions for our review: 1) Whether written notification of the public hearing on the 11-005 Application, held on March 23, 2011, was properly given to owners of all properties adjoining the property subject to the application, including all the owners of condominium units in the Highridge Condominiums; 2) Whether the Association and/or Highridge Condominium unit owners should have been a co-applicant to the 11-005 Application, and afforded a right to participate on the application, because the application relates to rights on land owned by the Association and individual unit owners; and 3) Whether the 11-005 Application is in conformance with the Killington Zoning Regulations.

Applicant filed a motion for summary judgment on all three questions raised in Appellants' Statement of Questions. In its motion, Applicant first argues that notice was not deficient because notice was sent to the legal mailing address of the Association and published in the Rutland Herald at least ten days prior to the public hearing. Furthermore, Applicant

---

[1] This Environmental Division appeal was placed on inactive status for a considerable period while the parties pursued related issues before the Civil Division.

1

argues, even if there were defects in the notice, Appellants received constructive notice and Appellants have waived any defective notice claim because a representative of the Association appeared at the public hearing and raised issues on behalf of the Association. Second, Applicant avers that there was no need to include Appellants as co-applicants because the 11-005 Application does not propose development on land owned by Appellants, and even if it did, the Vermont Supreme Court has already ruled that Applicant has the right to develop up to 250 units at Highridge without the consent of Appellants. Lastly, Applicant argues that the 11-005 Application satisfies all relevant provisions of the Killington Zoning Regulations (Regulations), and specifically addresses the 18 criteria in Section 505 of the Regulations pertaining to PUD review.

Appellants filed in opposition to the motion for summary judgment, and request judgment in their favor on all three issues. This Court held a motion hearing on February 18, 2016 at the Costello Court House in Burlington, Vermont. At the hearing, Appellants were represented by Judith Dillon, Esq. and Carl Lisman, Esq. Applicant was represented by Allan R. Keyes, Esq. No other interested parties or members of the Association appeared at the hearing, and the Town of Killington did not appear or participate. At the hearing, Appellants clarified that their opposition was intended as a cross motion for summary judgment. We treat the motions as cross motions for summary judgment and address them below.

### Factual Background

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.  The Ridgetop/Highridge PUD now before the Court is located in Killington, Vermont and totals about 38 acres in size. The PUD consists of the 11 acre Ridgetop parcel (Ridgetop) and the 26 acre Highridge parcel (Highridge) (collectively the Project).

2.  The Project received PUD approval in 1988 through the 88-169 permit. The approval provides, "Planned Unit Development Approval, under Section 505, is hereby issued to Northridge Development Corp. for the 37.95 +/- acre portion of the Highridge development off Roaring Brook East Road. The development consists of a total of 82

2

dwelling units with accessory recreational facilities and related site work." This approval expired on November 17, 1992.

3. Killington Pico Ski Resort Partners, LLC (KPSRP) is the successor in interest to Northridge Development Corporation.

4. In 1999, KPSRP filed the 99-029 application seeking new PUD approval for the Project, and specifically sought review of the nine single family parcels, 107A-1 through 107A-9 on the Sherburne Tax Map within the Ridgetop section. The 99-029 permit was approved and was set to expire on May 26, 2003.

5. In 2002, KPSRP filed the 02-006 application to extend PUD approval for the Project for another four years. The order approving the 02-006 permit specified, "All conditions of previous Highridge and Ridge Top Planned Unit Development approvals not specifically changed by these approvals shall remain in full force and effect." This PUD approval expired March 27, 2006.

6. In November of 2006, KPSRP filed Site Plan Renewal application 06-099, and Planned Unit Review application 06-098.

7. In its March 15, 2007 order approving the two applications, the Town of Killington Planning Commission described the applications as, "The applications are to renew for four years the Ridgetop section of the Highridge Planned Unit Development. The Project consists of nine, 20,000 square foot building lots on 11.31 acres."

8. The Planning Commission found that the Highridge PUD is about 38 acres and Ridgetop is an 11 acre section of the Highridge PUD.

9. In its order granting approval, the Planning Commission concluded that, "Based on the above Findings of Fact and Conclusions of Law the Killington Planning Commission approves, with conditions, Planned Unit Review application 06-098 and Site Plan Review application 06-099 by the Ridgetop Landowners Association and Killington Ltd. for the development of nine single family lots and related infrastructure and site work."

10. The 06-098 PUD permit was set to expire on March 14, 2011.

11. On March 11, 2011, KPSRP filed the 11-005 Application with the Town of Killington to renew the 06-098 PUD approval and 06-099 site plan approval. The 11-005 Application

3

states that the location of the property is the Ridgetop Subdivision, Highridge Road and High Mountain Road. The Application also provides that number of units includes "9 Single Family Homes on the 11.31 acre parcel, and 73 units on the 26.64 acre parcel."

12. The Highridge Condominium Owners Association and the individual unit owners in the Association are adjacent property owners to the Project.

13. The Association was served with a copy on the 11-005 Application.

14. The Notice of Public Hearing (Hearing Notice) for the 11-005 Application was published in the Rutland Herald on March 14, 2011.

15. The Association was sent the Hearing Notice at its legal mailing address listed on the Vermont Secretary of State's website.

16. Individual unit owners of the Highridge Condominium Owners Association were not mailed copies of the 11-005 Application or the Hearing Notice.

17. The Hearing Notice states that the hearing concerns the 11-005 PUD Application by the Ridgetop Landowners Association and Killington/Pico Resort Partners, LLC, and describes the purpose of the hearing as: "The Purpose of the hearing is to extend for four years the Ridgetop section of the Highridge Planned Unit Development. Review may include parts of the Highridge PUD which are not within the Ridgetop section, such as road access. The project is located on Tax Map 29 parcels 107A-1 through 107A-9 and 107B."

18. The minutes from the Planning Commission's public hearing on March 23, 2011 reveal that the 11-005 Application was described as seeking to "extend the Ridgetop section of the Highridge Planned Unit Development for four years."

19. At the public hearing, Greg Becker, accountant for the Association, read a statement from the Highridge Condominium Owners Association Board stating: "The Highridge Condominium Owners Association objects to the ongoing construction of this project which has lasted greater in length than originally planned. We find the continued construction as disruptive to our community and object to any extension of existing approvals."

4

20. On April 6, 2011, the Planning Commission approved the 11-005 Application granting PUD approval to the Project for four years, with an expiration date in March of 2015.

21. The Planning Commission's decision provides: "Based on the above Findings of Fact and Conclusions of Law the Killington Planning Commission approves, with conditions, Planned Unit Development application 11-005 by Ridgetop Owners Association and Killington /Pico Resort Ski Partners, LLC is approved to extend the Residential R-1 portions of the Highridge and Ridgetop PUD for four years."

<u>Discussion</u>

Pursuant to Rule 56 of the Vermont Rules of Civil Procedure, the Court will grant summary judgment to a moving party if that party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the Court looks at each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. The Court also accepts as true all factual allegations made in opposition to a motion for summary judgment so long as they are supported by "specific citations to particular parts of materials in the record . . . ." V.R.C.P. 56(c)(1)(A). If the responding party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed for purposes of the motion." V.R.C.P. 56(e)(2).

I. **Notice** (Question 1)

The notice provision of 12 V.S.A. 4464(a)(2)(B) requires that written notice of a PUD application must be sent to "the applicant and to the owners of all properties adjoining the property subject to development . . . ." Section 500 of the Regulations includes a similar notice provision, requiring: "Written notification to the owners of all properties adjoining the property subject to development . . . . The notification shall include date, time, place, [and] description of the proposed project and purpose of the hearing . . . ." Killington, VT, Zoning Regulations § 500 (2008). Exact conformance with 12 V.S.A. § 4464(a)(2), and Section 500, is not, however, a strict prerequisite to effective notice. The touchstone of adequate notice is to ensure there was

5

notice "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Town of Randolph v. Estate of White, 166 Vt. 280, 283 (1997) (quoting Mulane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). As we have previously discussed in the context of 12 V.S.A. § 4464(a)(2)(B), the purpose of these notice provisions "is to inform interested persons of a proposed action and to give them a reasonable opportunity to express their support or opposition." In re Southern Vermont Beagle Club, No. 142-9-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh, J.). This purpose is reflected in the savings clause of 12 V.S.A. § 4464, which provides: "No defect in form or substance . . . shall invalidate the action of the appropriate municipal panel where reasonable efforts are made to provide adequate posting and notice." 24 V.S.A. § 4464(5). Nevertheless, where the notice does not adequately inform interested parties, or in other words if the "defective posting or notice was materially misleading in content," the action is invalid regardless of the effort undertaken. Id.

Applicant moves for summary judgment on this issue arguing that the notice it sent to the legal mailing address of the Association was effective notice for the individual unit owners. Applicant further argues that even if individual notice was required by statute, the failure to send actual notice to each unit owner was merely a procedural defect and the individual unit owners did receive notice and had an opportunity to voice their opposition as evidenced by the fact that a representative for the Association appeared at the public hearing and read a statement from the Association's Board. In response, Appellants argue that regardless of the notice sent to the Association, each of the 118 unit owners of Highridge was required to receive individual written notice pursuant to 24 V.S.A. § 4464(a)(2)(B) and Section 500 of the Regulations because they are owners of property adjoining the property subject to the application. Further, Appellants argue, the information provided in the Hearing Notice was misleading and insufficient to provide actual or constructive notice of the scope of the 11-005 Application.

The crux of the notice dispute here is two-fold. First, is the issue of whether the notice was defective because each individual unit owner of the Highridge Condominium Association was not mailed a copy of the 11-005 Application or the Hearing Notice. Second, assuming the

6

notice was not defective because of infirmities in service, the ultimate question becomes whether the notice that was provided adequately informed interested parties that the 11-005 Application sought to extend PUD approval for both the Ridgetop and Highridge portions of the Project. For the following reasons, we conclude that the notice was materially misleading, thus regardless of Applicant's efforts to provide notice, we find the notice invalid.

It is undisputed that the Association and the individual unit owners are adjoining property owners. It is further undisputed that the Association's individual unit owners did not receive individual mailed notice. Rather, Applicant sent the 11-005 Application and the Hearing Notice to the Association at its legal mailing address, and the Town published the Hearing Notice in the Rutland Herald soon thereafter. Appellants rely on a strict reading of the statute and Regulations to argue that individual written notice to each unit owner is required regardless of whether actual or constructive notice was provided via notice to the Association. Applicant counters that the Association functions as the agent for the individual owners, thus notice was effective when sent to the Association's address. Appellants acknowledge that the Condominium Ownership Act does allow notice on the Association to serve as notice on the individual unit owners, see 27 V.S.A. § 1327, but argue that 27 V.S.A. § 1327 does not overrule the notice requirements of 24 V.S.A. 4464 or Section 500 of the Regulations, and therefore individual written notice was required and Applicant's service was defective.

Although the notice provision of Section 4464(a)(2)(B) and Section 500 of the Regulations were not strictly complied with, we question whether the failure to adhere to the statutory and regulatory notice provisions in this case constitutes ineffective notice. See Quincy Park Condo. Unit Owners' Ass'n v. D.C. Bd. of Zoning Adjustment, 4 A.3d 1283, 1289 (D.C. 2010) (finding that notice sent to the association constitutionally sufficient because "the association's officers are the owners' fiduciaries, and thus it is reasonable to rely on those officers to inform the owners of the hearing."). Nevertheless, we need not conclusively decide the issue of whether the lack of individual notice to the unit owners rendered the notice ineffective because we find that the substance of the notice was materially misleading.

The undisputed facts reveal that there were several layers of incomplete and potentially misleading information. For one, the Hearing Notice only indicated that the 11-005 Application

7

pertained to the Ridgetop portion of the Project. Further, while Appellants should have done some research upon receiving the Hearing Notice and the 11-005 Application seeking to renew the 06-098 permit, a review of the 06-098 permit does not make it clear that the Highridge portion of the Project is involved. Lastly, based on the facts before the Court, it appears the discussion at the public hearing was limited to the Ridgetop section. Due to the combination of deficiencies, we find that the notice did not adequately inform Appellants of the scope and focus of the 11-005 Application. We therefore conclude that the notice was materially misleading, and thus invalid. Accordingly, we grant summary judgment to Appellants on Question 1.

## II.    Co-Applicancy (Question 2)

Appellants argue that they were necessary co-applicants for the 11-005 Application and their omission from the Application violated the Regulations. The only provision of the Regulations that Appellants identify as establishing a co-applicancy requirement is Section 610–Zoning Permits. Section 610 requires that all applications for a zoning permit shall be accompanied by, among other things, "A statement that the applicant is the owner of the land and a reference to the book and page in the Town of Killington Land Records of the applicant's deed." Regulations § 610(B)(4). As we have explained, "[the purpose of requiring the identity of a landowner on an application for a municipal land use approval is to ensure that the landowner, who has a substantial interest in his or her property, supports the proposed use of the property." In re Southern Vermont Beagle Club, No. 142-9-11 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh, J.).

To begin, we look to whether the Regulations require the strict co-applicancy Appellants suggest. Pursuant to Section 505, an applicant who seeks PUD review must also receive a zoning permit under Section 610 before development may occur. See Regulations § 505(17). If only PUD approval is sought, it does not appear that the zoning permit requirements of Section 610 are triggered. Instead, once an applicant with PUD approval wishes to begin construction, the applicant is required to apply for a Section 610 zoning permit. See Regulations § 505(17) and (18). Here, Applicant represents that it has not yet sought a Section 610 zoning permit and

is only currently seeking PUD approval. Therefore, it is not clear that Section 610's requirement that the landowner be a co-applicant is applicable in this case.

Furthermore, even if the Regulations impose a co-applicancy requirement for PUD approval, we conclude that Appellants are not necessary co-applicants. The Vermont Supreme Court has already ruled that Applicant has the exclusive right to develop up to 250 units at Highridge without the consent of the Association. See Highridge Condominium Owners Assn. v. Killington/Pico Ski Resort Partners, LLC, 2014 VT 120, ¶ 25 (holding that Applicant has "the right to add units up to the 250–unit maximum expressed in the declaration without the consent of the Association.").[2] Following this clear declaration from the Vermont Supreme Court, we conclude that Applicant has made a sufficient showing that it holds the exclusive right to proceed with the PUD development with or without the consent of the Highridge Condominium Owners Association.[3] We therefore grant summary judgment to Applicant on Question 2.

III.     **Zoning Regulations** (Question 3)

We need not reach Appellants' Question 3 and the issue of whether the 11-005 Application complies with the Regulations. Appellants will have a full opportunity to raise any zoning regulation compliance issues before the Planning Commission after Applicant provides proper notice of the 11-005 Application and related public hearing.

**Conclusion**

For the foregoing reasons, we grant in part and deny in part Appellants' cross motion for summary judgment. We also grant in part and deny in part Applicant's motion for summary judgment. Consistent with this decision, we hereby **Grant** Appellants' motion for summary judgment on Question 1 (Notice), and remand the matter for a new public hearing on the 11-005 Application by the Town of Killington Planning Commission following appropriate notice to interested parties. Killington/Pico Ski Resort Partners, LLC must re-notice the 11-005

---

[2] The Superior Court, on remand, entered judgment for Applicant consistent with the Supreme Court's ruling and ordered, "this Court enters judgment that Killington/Pico Ski Resort Partners LLC holds the right to add units to the Highridge Condominiums without Association consent, up to the 250-unit limit stated in the declaration." Highridge Condominium Owners Assn. v. Killington/Pico Ski Resort Partners, LLC, No. 122-2-12 Rdcv (Vt. Super. Ct. April 9, 2015).

[3] We reiterate our frequent maxim that the Environmental Division does not adjudicate private property rights. See In re Woodstock Cmty. Trust & Hous. Vermont PRD, 2012 VT 87, ¶ 40, 192 Vt. 474. That is in the sole purview of the Civil Division of the Vermont Superior Court. Here, Applicant has made a sufficient showing of its exclusive right to develop the Ridgetop and Highridge portions of the Project.

9

Application and provide notice to each unit owner of the Highridge Condominium Owners Association as well as to any other party entitled to notice. Next, we **Grant** summary judgment to Applicant on Question 2 (co-applicancy). Appellants are not necessary co-applicants on the 11-005 Application. We further conclude that Applicant's re-noticing of the 11-005 Application maintains the original filing date in March of 2011.

This matter is **REMANDED** to the Town of Killington Planning Commission. This concludes the proceedings before the Court in this matter.

Electronically signed on February 22, 2016 at 01:20 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

10