STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 60-5-17 Vtec |

| | |
|---|---|
| Highridge/Ridgetop PUD Renewal | |

**Altered Decision on the Merits**[1]

Killington/Pico Ski Resort Partners, LLC, ("KPSRP" or "Applicant") is the current owner of the development rights for the unbuilt portions of two adjoining developments known as Highridge and Ridgetop, near the Killington Ski Resort in Killington, Vermont.[2] A predecessor developer first received municipal land use approval for the two developments in 1988. The planned developments were not fully completed at the time that their original planned unit development ("PUD") approval expired. So now, thirty years after the original PUD approval was issued, KPSRP seeks to extend the latest PUD authorizing the development with its pending application (Application No. PUD 17-003).

When the Town of Killington Planning Commission ("the Planning Commission") approved KPSRP's pending PUD application, the Highridge Condominium Owners' Association ("Appellant" or "Highridge Owners' Assoc.") filed a timely appeal with this Court. After the parties engaged in

---

[1] This Altered Decision on the Merits supersedes this Court's prior June 6, 2019 Decision on the Merits. In response to a motion to amend the judgment pursuant to V.R.C.P. 59(e), this Court reworded Conditions 3 and 4 for clarity. We also made minor adjustments to Conditions 1 and 5. These changes implicate page 27 of this Altered Decision on the Merits.

[2] In separate litigation originally filed in the Civil Division of the Vermont Superior Court, Rutland Unit, these same parties disputed the ownership and development rights in the Highridge development. There appears to be no dispute that the Highridge Owners' Association has an ownership interest in the areas identified as common lands. However, the Owners' Association disputed that KPSRP, as successor to the original developer, had the right to complete the development.

The Civil Division originally granted summary judgment to the Owners' Association, but the Vermont Supreme Court reversed that determination, concluding that KPSRP "is the successor in interest to the original developer with respect to development rights, and is entitled to construct the proposed additional [Highridge] units under the declaration of condominium . . ., without the consent of the Association." Highridge Condo. Owners Assoc. v. Killington/Pico Ski Resort Partners, LLC, 2014 VT 120 ¶¶ 1, 25, 198 Vt. 44.

settlement discussions that did not resolve their disputes, they completed discovery and other efforts at trial preparation, and the Court conducted a two-day trial at the Vermont Superior Court, Criminal Division, Rutland Unit, on November 28 and 29, 2018. After the trial was completed, the parties requested thirty days to file proposed findings of fact and conclusions of law. That filing deadline was extended several times, at one or more of the parties' request, such that the matter came under advisement for the Court's consideration on February 6, 2019.

KPSRP was assisted in this litigation by its attorneys, Andrew H. Maass, Esq., and Erin Gilmore, Esq.; Highridge Owners' Assoc. was assisted by its attorney, Judith L. Dillon, Esq.; the Town of Killington ("Town") was assisted by its attorney, Kevin E. Brown, Esq.; the Ridgetop Landowners Association appeared but was unrepresented; and Ridgetop owner Ely A. Kirschner appeared as a self-represented person.

### Procedural History

This development has an extended permitting and litigation history. We need not detail that entire history to address the issues presented by the present appeal. Rather, we provide the following summary to assist in providing some context for the Factual Findings that follow.

By its pending application, KPSRP seeks a further extension of the timeline for the joint PUD approval of the two developments known as Highridge and Ridgetop; the first PUD approval was granted in 1988. In connection with that initial PUD approval, the then-developer sought and received site plan approval, a zoning permit, and other necessary state permits to develop both properties. Some, but not all, of the proposed developments at both Highridge and Ridgetop were constructed; the individual residential units that were completed were sold to individual owners.

The Ridgetop development was planned to contain nine single-family homes, with surrounding common lands and access roads. The Highridge development was planned to include residences contained in multiple-unit buildings, as well as three single-family dwellings. It was not entirely clear from the evidence presented at trial when the initial construction was completed in the Highridge and Ridgetop developments, although the Highridge Owners' Assoc. president, who testified at trial, estimated that the residences now existing at the two developments were completed in the late 1980s and early 1990s. The Court notes that that

estimate coincides with an economic recession that began in the late 1980s and especially stifled development of second homes near and at Vermont ski resorts.

At trial, the parties appeared to agree that currently six of the nine Ridgetop homes have been completed and sold and that thirty-six of the Highridge units (including the three planned single-family dwellings) have been completed and sold. KPSRP seeks PUD approval for the three remaining homes in the Ridgetop development and thirty-seven residences in proposed condominium buildings in the Highridge development.

The PUD approval issued in 1988 ("PUD #88-169") contained several conditions, including that its authority would last for a four-year term. It appears that this PUD approval was allowed to lapse.

Then, about ten years after the initial PUD approval, KPSRP acquired all rights of the initial developer and thereafter filed an application for a new PUD approval for both developments. The Planning Commission granted that approval with conditions, including a condition that the new PUD approval would expire on May 26, 2003. See PUD #99-029.[3] As that expiration date approached, KPSRP applied for a further extension of the PUD approval, which the Planning Commission granted with similar conditions, including that the extended PUD approval would expire on March 27, 2006. See PUD #02-006. Upon that date, the extended PUD approval expired.

In November of 2006, KPSRP filed two new applications: the first for a new PUD approval (PUD Application #06-098) and the second for a new site plan approval (Site Plan Application #06-099). Those approvals were granted by the Planning Commission on March 15, 2007. See PUD #06-098 and Site Plan #06-099. The PUD approval contained conditions similar to those defined by its predecessors, including that its authority would expire on March 14, 2011, if the developments were not completed as proposed.

By the spring of 2011, it became clear that KPSRP's plans to complete the developments would not be achieved by the authorization expiration date. Therefore, on March 11, 2011, KPSRP applied for renewals of both the PUD and site plan approvals. See Application #11-005.

---

[3] Some of this procedural history has been gleaned from this Court's Decision in a prior appeal concerning these same developments. See Ridgetop/Highridge PUD, No. 69-5-11 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 22, 2016) (Walsh, J.). That 2016 Decision is referenced in more detail below.

Notice of a Planning Commission hearing on the renewal application, set for March 23, 2011, was sent, but that notice only referenced a completion of the Ridgetop development. Nonetheless, it appears that both developments were discussed in the pending application and at the Planning Commission hearing. This Court noted in its 2016 Decision that Application #11-005 "provides that the number of units includes '9 Single Family Homes on [the Ridgetop development, identified as] the 11.31 acre parcel, and 73 units on [the Highridge development, identified as] the 36.64 acre parcel.'" Id. at 4.

As noted by this Court in its 2016 Decision, the Planning Commission concluded that "[b]ased on the above Findings of Fact and Conclusions of Law the Killington Planning Commission approves, with conditions, Planned Unit Development application 11-005 by Ridgetop Owners Association and Killington/Pico Ski Resort Partners, LLC . . . to extend the Residential R-1 portions of the Highridge and Ridgetop PUD for four years." Id. at 5 (quoting the Planning Commission April 6, 2011 decision).

Appellant filed a timely appeal from that 2011 Planning Commission decision with this Court, including challenges to the notice prepared and sent out concerning the March 23, 2011 Planning Commission hearing. In response to the parties' cross-motions for summary judgment, the Court reached several conclusions that govern our analysis in this subsequent appeal, including the following:

- The hearing notice was deficient in that it provided incomplete notice, since it only referenced the Ridgetop development, even though the application and Planning Commission testimony also pertained to expansions at the Highridge development;

- Because of the incompleteness of the hearing notice, the Court remanded Application #11-005 back to the Planning Commission, with a direction that the Planning Commission provide a new hearing notice that references all components of the proposed developments presented in the remanded application, and that the revised notice be sent to all interested parties entitled to notice;[4] and

---

[4] Appellant also asserted that the 2011 hearing notice was deficient because it was not served on the individual unit owners in the Highridge development. This Court noted that other courts, when presented with similar factual circumstances, have concluded that notice sent to a homeowners' association was sufficient notice upon the individual homeowners, because "the association's officers are the owners' fiduciaries . . . ." Ridgetop/ Highridge PUD, No. 69-5-11 Vtec at 7 (Feb. 22, 2016) (citing Quincy Park Condo. Unit Owners' Assoc. v. D.C. Bd. Of Zoning Adjustment, 4 A.3rd 1283, 1289 (D.C. 2010)). However, perhaps in an abundance of caution, the Court

- The Court directed that the Planning Commission conduct "a new public hearing on the #11-005 remanded application . . . following appropriate notice to interested parties" and that the remanded application must "maintain[] the original filing date of March of 2011" and be reviewed for compliance with the zoning regulations in effect in 2011. Id. at 9–10.

No party appealed this Court's 2016 Decision. That Decision therefore became final on March 23, 2016.

On February 1, 2017, a KPSRP official contacted the Town of Killington Town Planner ("the Town Planner") to coordinate how KPSRP could initiate the Planning Commission's review of the remanded 2011 application. Those two gentlemen discussed how to coordinate that remanded review, as evidenced by some of their email exchanges that were admitted into evidence at our 2018 trial. See Appellant Exhibit 16. They worked on the necessary revisions to the notice for the hearing on the remanded application, and on March 27, 2017, KPSRP filed a revision of the 2011 application, with additional materials to support the application to be considered on remand. A copy of the revised application considered on remand was admitted at our 2018 trial as KPSRP Exhibit I. The Town Planner accepted the revised application and supporting materials and assigned #17-003 to those filings, for the purpose of "record keeping and permit tracking purposes."[5]

The Planning Commission held hearings on the remanded application on April 12 and 26, 2017. The testimony and other evidence presented at those hearings addressed the requested PUD approval for completion of both the Ridgetop and Highridge developments. The Planning Commission specifically referenced this Court's 2016 Decision, noting that it was conducting a re-hearing of Application #11-005 and that its review would be conducted using the Town of Killington Zoning Regulations in effect in 2011. Those Regulations, amended and made effective

---

specifically directed that the revised notice of the Planning Commission's hearing on the remanded 2011 application must be provided "to each unit owner of the Highridge Condominium Owners Association as well as any other party entitled to notice." Id. at 10. There was no challenge or evidence presented at our 2018 trial that the revised notice was deficient or that KPSRP failed to serve the revised notice on all entitled parties.

[5] See Highridge/Ridgetop PUD Approval, No. 17-003 Decision at 1 (Killington Planning Comm'n Apr. 26, 2017), a copy of which was filed with the Court on May 18, 2018, with Appellant's Notice of Appeal. We regard this Planning Commission decision as part of the record on this appeal and hereinafter refer to it as "PUD #17-003 Approval Decision."

as of August 11, 2008, were admitted into evidence as KPSRP Exhibit C; we henceforth refer to them as "the 2008 Regulations."

The decision by the Planning Commission on the remanded #11-005 Application, as supplemented by the #17-003 Application materials, directed that the requested PUD approval be granted, subject to the following conditions:

1.  This PUD approval is for four years and shall expire on April 26, 2021.

2.  Any conditions from previous Highridge/Ridgetop PUD Approvals not specifically changed by this PUD approval shall remain in full force and effect.

3.  The Highridge section of the PUD shall be required to receive Site Plan Review Approval prior to the issuance of any Zoning Permits for construction reviewed and approved under this PUD.

4.  The Applicants shall consult with Killington Fire and Rescue concerning the design of the [Highridge] parking lot and fire hydrant locations prior to the submission of an application for Site Plan Review.

5.  This PUD approval shall allow the three remaining undeveloped Ridgetop lots to be developed in conformance with [pre-]existing PUD and Site Plan Review Approvals.

6.  The following condition from PUD Approval 06-098 is made null and void by this PUD Approval; "Prior to the removal of any trees from Ridgetop common land the Ridgetop Landowners Association shall submit a landscaping plan to the Planning Commission for their approval. No trees shall be removed from the common land without Commission approval with the exception of trees which pose an imminent threat to health or public safety."

7.  This is a summary of conditions from the above Findings of Fact. Conditions contained in the Findings but not in the summary shall also be conditions of this approval.

8.  This PUD approval and conditions shall be binding upon the applicants and all assigns and successors in interest.

PUD #17-003 Approval Decision at 7; a copy of that Planning Commission Decision was admitted at our 2018 trial as KPSRP Exhibit J.

The Highridge Owners' Assoc. filed a timely appeal from the Planning Commission's April 26, 2017 Decision with this Court on May 18, 2017. As noted above at footnote 3, Appellant attached a copy of the Planning Commission decision to its Notice of Appeal.

Appellant filed its initial Statement of Questions on June 7, 2017. Appellant thereafter filed a Clarification of its Question 1, pursuant to this Court's Entry Order of March 26, 2018. When read together, Appellant's Statements of Questions pose the following legal issues:

1. Whether the PUD application #17-003 is in conformance with Section 240 of the Killington Zoning Regulations.

1(a). Whether the PUD application #17-003 is in conformance with Section 505 of the Killington Zoning Regulations.

2. Whether the PUD application #17-003 is a new application, or a re-noticing of PUD application #11-005.

3. Whether the PUD application #17-003 relates back to the original filing date of PUD application #11-005.

4. Whether the PUD application #17-003 can seek renewal of and rely on findings of the #88-169 PUD approval, which the Environmental Division of the Superior Court ruled had expired in 1992.

Based upon the credible testimony and other evidence that was admitted at trial, the Court renders the following Findings of Fact, Conclusions of Law, and the Altered Judgment Order that accompanies this Altered Decision.

**Findings of Fact**

1. The Highridge and Ridgetop developments were originally conceived of in the early to mid-1980s as a mixture of condominiums and single-family homes located near the Killington Ski Resort. Both developments are accessed via High Ridge Road in Killington, Vermont.

2. The Ridgetop development contains 11.31± acres and was previously permitted for the construction of nine single-family homes. Six of those nine permitted homes have been built and sold. KPSRP seeks authority in the pending PUD application to construct and build the remaining three Ridgetop single-family dwellings.

3. The Highridge development originally contained 36.64± acres, 10± acres of which are located in the Ski Village Zoning District ("SV District"). All lands in the SV District were previously developed and are not the subject of the pending PUD application.

4. All of the Ridgetop acreage and all of the remaining Highridge acreage is located in the Residential 1 Zoning District ("R-1 District"). All of the R-1 District lands within these two developments are the subject of the pending PUD application.

5. The R-1 District provides for a minimum lot size of five acres. Regulations § 240.3. The Highridge and Ridgetop parcels each far exceed this minimum lot size.

6. Pursuant to Regulations § 240.3, density for PUDs within the R-1 District is restricted to no less than 20,000 square feet of land for each dwelling unit. Based upon this density restriction,

we calculate that the maximum development allowed for the combined Ridgetop/Highridge development is as follows:

Allowable Density:[6]

| | |
|---|---|
| 26.64 ac. ÷ 1 unit per 20,000 sq. ft: | 58 units |
| 11.31 ac. ÷ 1 unit per 20,000 sq. ft: | 24 units |
| Total Units Allowed: | 82 units |

Proposed Density (including existing development):

| | |
|---|---|
| Highridge development: | 73 units |
| Ridgetop development: | 9 units |
| Total Units Allowed: | 82 units |

7.      Since they were initially conceived of in the 1980s, these two developments have consistently been presented and approved as a combined PUD development.  The greater development concentration in the Highridge section has been offset by the lesser development concentration in the Ridgetop section.

8.      As noted above, portions of each development have already been completed and sold. However, because those units currently exist on the property, we subtract them from the density maximums noted above to determine the number of units KPSRP would be entitled to develop going forward, without exceeding the PUD density limits for the R-1 District.

9.      As previously noted, there have been six residences already constructed in the Ridgetop development.  KPSRP proposes to construct three more residences, for a total of nine Ridgetop residences.

10.      KPSRP reports that a total of thirty-six units have been completed and sold in the Highridge development, in Buildings B, H, I, J, and Q; that total also includes the three single-family Highridge residences.  See Exhibit I, at 3.  When subtracting all the constructed and sold units, as well as the proposed three Ridgetop residences, from the total allowable density of eighty-two units, KPSRP could construct thirty-seven more Highridge condominium units and not exceed the PUD density limitations for the R-1 District.

11.      KPSRP attached to its revised application (Exhibit I) several site maps depicting the proposed PUD, including a topographical map depicting the areas within the SV and R-1 Districts (Map A); an overall site plan, depicting the existing and proposed buildings in each development

---

[6] Our calculations are based upon each acre containing 43,560 square feet.

(Map B); an as-built and proposed building plan for the Ridgetop development (Map C); and an as-built and proposed building plan for the Highridge development (Map D). These maps are identical or similar to maps previously submitted to the Planning Commission in prior PUD and site plan proceedings.

12.    The thirty-seven proposed additional Highridge condominium units would be included within proposed Buildings K, L, M, and N, as depicted on Map B, referenced above. However, KPSRP specifically stated in its application that the locations of the remaining Highridge unit buildings "are preliminary and may change in the future when an official Town [site] plan review is done." Exhibit I at 2.

13.    KPSRP also noted in its application that it was not requesting affirmative findings as to the "[a]rchitectural relationships, landscaping and loading spaces" or to the adequacy of water and sewer supplies for the remaining Highridge units, leaving that review to when it submits its site plan application to the Planning Commission and its water and sewer supply application to the Vermont Agency of Natural Resources ("ANR"). Id.

14.    By its application, KPSRP proposes that, upon PUD approval, the three remaining Ridgetop lots (Lots 1, 5, and 7) would be sold to individual owners, who would then be responsible for applying for and obtaining any needed approvals for the construction and use of their individual homes. Id.

15.    The proposed new residences within the Ridgetop and Highridge developments will be accessed by the roadways and accessways depicted on the application maps, referenced above, which have not changed since the PUD approval was first received. Therefore, all vehicular and pedestrian circulation within the development will remain as authorized in previous PUD approvals.

16.    KPSRP does not request any reduction in the minimum setbacks applicable to the remaining portion of the Highridge development. As to the Ridgetop development, KPSRP only requests that the applicable setbacks be reduced to twenty-five feet, as reflected in prior PUD approvals. See PUD #06-098 and Site Plan Review #06-099, a copy of which was admitted at trial as KPSRP Exhibit E and Appellant Exhibit 3.

17.     A prior PUD approval, PUD #06-098, included a condition (Condition 7) with the following provision:

> Prior to the removal of any trees from Ridgetop common land the Ridgetop Landowners Association shall submit a landscaping plan to the Planning Commission for their approval. No trees shall be removed from the common land without Commission approval with the exception of trees which pose an imminent threat to health or public safety.

18.     The Town Planner, Richard Horner, credibly testified that this PUD approval condition has created an "administrative nightmare" and that he believes it does not serve its original intended purpose. KPSRP agrees, and requests in its 2011 application, as supplemented by its 2017 application submitted in the court-ordered remand proceedings, that Condition 7 be removed.

19.     Fire hydrants have already been installed and maintained in the Ridgeway and Highridge developments pursuant to prior PUD approvals. KPSRP pledges to consult with the Town of Killington Fire Department officials in determining what additional fire hydrants and other safety facilities may be needed in the Highridge development, and to include those additions in its future applications for site plan approval and a zoning permit for the additional Highridge units.

20.     The new developments proposed for Highridge and Ridgetop are solely for residential uses; there is not a commercial component to the proposed development.

21.     The proposed new developments are similar or identical to the already existing construction within the Highridge and Ridgetop developments and fit within the character of the surrounding lands and structures.

22.     Each Ridgetop house site includes its own driveway and area for at least two parking spaces at the residence. The Highridge development already includes accessways to each of the buildings that host the existing individual condominium units. The proposed new condominium buildings will also be served by sufficient parking, all of which will be detailed in the future site plan application.

23.     The Ridgetop development has a State of Vermont Water Supply and Wastewater disposal permit and a construction permit from the Water Supply Division of the Department of Environmental Conservation, a department within ANR.

24.     The new proposed Highridge units do not currently have a State of Vermont Water Supply and Wastewater disposal permit. However, KPSRP acknowledged in its 2011 and 2017

applications that it will need to obtain such permits prior to commencement of construction of the Highridge development, together with site plan approval, a zoning permit, and any other necessary state approvals.

25. There is a wetland near the southwestern boundary of the Ridgetop development; it was identified in the prior PUD proceedings. KPSRP pledges to continue to protect this wetland and its adjacent buffering lands, as has been directed in prior PUD approvals.

26. There are no municipal lands within either the Ridgetop or Highridge developments.

27. The prior PUD approvals included general conditions or representations by the then-developer as applicant to protect public health, safety, and welfare, including landscaping and screening. By its pending application, KPSRP pledges to maintain such measures and provide additional landscaping and screening details in its future landscaping plan, which will be submitted with its future Highridge site plan review application.

28. KPSRP requests in its pending application that it not be required to submit a performance bond to cover its planned future development. There was no request or evidence presented at trial concerning the need for a performance bond concerning the planned future development.

29. While the authority to develop that was contained in each of the prior PUD approvals has expired (see PUD #88-169; PUD #99-029; PUD #02-006; and PUD #06-098), each of those approvals contained conditions and terms governing the developments that run with the land and are binding upon the then-applicant and all assigns and successors in interest. See, for example, PUD #06-098 (KPSRP Exhibit E) at 8, which included such a condition as Condition 11: "[t]his PUD approval and Site Plan Review approval and conditions shall be binding upon the applicants and all assigns and successors in interest."

30. KPSRP pledges to abide by all prior PUD conditions and approvals, with the only exception being the Ridgetop tree-cutting condition, as noted above in Findings 17 and 18.

### Discussion

Vermont municipalities have been authorized to enact local land use regulations through the enabling statutes found in 24 V.S.A., chapter 117. With those authorization provisions, municipalities are also directed that they "should provide for planned unit developments to permit flexibility in the application of land development regulations . . . and in conformance with

the municipal plan." 24 V.S.A. § 4417(a). In essence, planned unit developments provide a means by which conventional zoning regulations can be relaxed, so that more compact development, often where density and setback regulations are eased, can be allowed. See 24 V.S.A. § 4417(b). However, so that these deviations from conventional zoning regulations are restricted to stated, established purposes and standards, any municipal PUD regulations must include specific provisions. 24 V.S.A. § 4417(c).

The Town of Killington has enacted zoning regulations that govern planned unit developments; its stated goals are as follows:

> General Intent: A Planned Unit Development is intended to permit developments of larger parcels of land which will provide a desirable and stable environment in harmony with that of the surrounding area; to permit flexibility that will encourage a more creative approach in the development of land, will result in a more efficient, aesthetic and desirable use of open area, to permit flexibility in design, placement of buildings, use of open spaces, circulation facilities, and off-street parking areas; and to utilize best the potentials of sites characterized by special features of geography, topography, size or shape.

Regulations § 505.

The Killington Regulations allow a landowner to undertake its development plans, even when such plans call for "modification" of the conventional zoning regulations, upon approval of its PUD application. Id. However, PUD approval does not exempt a planned development from obtaining all other necessary municipal approvals and permits, such as site plan approval and a zoning permit. So, we enter our analysis of the PUD application presented by this appeal by noting KPSRP's acknowledgements that it must obtain the necessary site plan and zoning approvals, as well as other necessary state permits, before it may commence completion of the construction of the Highridge development portion of its PUD. We also note that in this appeal we only consider the PUD application presented and its conformance with the applicable regulatory standards.

Appellant has presented five legal issues in its Statement of Questions, as clarified. Those legal issues establish the parameters of our jurisdiction in this appeal. See V.R.E.C.P. 5(f). We address those legal issues in numerical order below.

**Question 1:  Is PUD Application #17-003 in conformance with Regulations § 240?**

Regulations § 240 provides the use and dimensional requirements for land uses in various zoning districts.  Since all of the land where these developments will occur is in the R-1 District, only subsection (3) applies to these proposed developments.

The use and dimensional requirements of § 240(3) are separated into two groups: those applicable to developments in a PUD, and those not in a PUD.  For a PUD development, the allowed uses are "[o]ne, two, and multi-family dwellings or any combination thereof."  Id.  The minimum lot area is 5 acres, with a minimum lot area per dwelling of 20,000 square feet.  Both the Ridgetop and Highridge developments conform to these dimensional requirements.

The minimum front setback required for R-1 District PUDs is 25 feet.  Id.  Both developments conform to this requirement as well.  The side and rear setbacks for PUD developments is 100 feet.  While the Highridge development conforms to these setback requirements, KPSRP requests that the side and rear setbacks for the Ridgetop development be reduced to 25 feet as well.

The Planning Commission is authorized to reduce setbacks in approved PUDs pursuant to 24 V.S.A. § 4417(a)(4), which provides for "flexibility in site and lot layout, building design, [and] placement and clustering of buildings . . . ."  This same setback reduction was approved in the prior PUD approvals.  See, in particular, PUD #06-098.  No credible evidence was presented at our trial to contradict the appropriateness of approving KPSRP's requested reduction in the Ridgetop side and rear setbacks.  By granting these setback modifications, we are allowing the Ridgetop development to maintain modified setbacks for both the residences that have already been built and the three residences proposed to be built.  In light of this uniformity and the similar setback modifications contained in the prior PUD approvals, we conclude that the requested setback modification should be granted.

For all these reasons, we answer Appellant's Question 1 in the affirmative: the proposed PUD application for the completion of these developments conforms with Regulations § 240.

**Question 1(a):  Is PUD Application #17-003 in conformance with Regulations § 505?**

By its Question 1(a), Appellant asks whether Application #17-003 is in conformance with Regulations § 505.  We understand that Appellant's Question 1(a) references Application #17-

003 as the materials supplementing the remanded Application #11-005 and will conduct our review accordingly.

Regulations § 505 establishes the general intent, standards, and conditions for authorizing planned unit developments. This PUD Regulation sets out eighteen separate standards and conditions; we review them in numerical order below.

Standards and Conditions #1 directs that a site plan shall be submitted to the Planning Commission. KPSRP submitted a site map (Map B, attached to KPSRP Exhibit I) which shows both the pre-existing and proposed portions of each development. All Ridgetop residences represented on Map B are located as they have been located in previous PUD applications. In regards to the thirty-seven units proposed to be added to the existing Highridge development, KPSRP noted in its application narrative that the four proposed condominium buildings identified to house the proposed new Highridge units are "preliminary", and that these building locations "may change in the future when an official Town [site] plan review is done." Exhibit I, p. 2. KPSRP also noted in this application narrative that it was not seeking positive findings with respect to "(1) [a]rchitectural relationships, landscaping and unloading space [and] (2) [a]dequate water and sewer supply." Id. KPSRP pledges that it will provide these details in its future applications for site plan approval and a zoning permit. We are convinced that KPSRP's pledge is authentic and credible, especially since it will be unable to commence construction on these remaining condominium buildings until the Town approves its site plan review and zoning permit applications. The same is true for its pledge to apply for and obtain a water supply and wastewater disposal permit from ANR, since it would be unlawful to commence construction and sell the new units without these ANR approvals.

Standards and Conditions 1 also directs that a PUD application shall "also include both maps and a written statement and must show enough of the area surrounding the proposed PUD to demonstrate the relationship [of] the PUD to adjoining uses, both existing and proposed." Id. KPSRP has fulfilled this standard by its 2011 application, as supplemented by its 2017 application and materials, which when reviewed together include maps of the proposed developments and surrounding area, as well as an application narrative that credibly shows that the proposed

development will be situated amongst similar or identical developments already existing on neighboring lands.

Appellant raises several objections.  We first note that this Court remanded the pending 2011 application because of two main deficiencies: first, the Court directed that KPSRP, working with the Planning Commission, must revise the narrative of the notice to include a reference to the proposed new residences in both the Ridgetop and Highridge developments.  The deficient notice sent out in 2011 only referenced the proposed new development at Ridgetop, even though both the 2011 application and the testimony solicited at the 2011 Planning Commission hearing addressed both developments.  Second, the Court directed that a revised notice must be sent to all Highridge unit owners, as well as any other parties entitled to notice.  The deficient notice sent out in 2011 was only served on the Highridge Owners' Assoc., not on its individual owners.  Appellant's challenges in the current appeal appear to ignore that the revised 2017 notice actually referenced both developments, as directed by the Court in its 2016 Decision.

KPSRP's 2017 application narrative specifically states that "[a]s directed by the [2016 Environmental] court decision, we are requesting the March 2011 renewal of the PUD approval #06-098, as may be modified therein."  2017 Application #17-003 (Exhibit I), at 2.  KPSRP's application narrative also specifically references this Court's directive that the revised notice for the remanded application (Application #11-005) "maintains the original filing date in March of 2011" and that the remanded application should be considered for conformance with the "2008 Town of Killington Zoning Regulations, which were in affect [sic] during the previous 2011 submittal."  Id. at 1–2.

These KPSRP references in its application narrative faithfully conformed to this Court's 2016 Decision.  We cannot accept Appellant's assertion that KPSRP failed to request review of its remanded application, or that it failed to properly revise the notice for the 2017 Planning Commission hearing on the remanded application, because such assertions are not credible in light of the uncontroverted KPSRP submissions.

Appellant raises several other challenges to the application materials KPSRP submitted in 2017.  We address only four further objections here, since the Appellant's remaining objections are more appropriately addressed when considering Appellant's Questions 2, 3, and 4, below.

First, Appellant asserts that since KPSRP submitted additional materials for the Planning Commission to consider in its 2017 hearings, those hearings were not conducted on a remanded application, but rather on a new application. We find this claim somewhat ironic, given that the 2017 hearings were made necessary by Appellant properly bringing to light the deficiencies of the 2011 hearing notice. Given that this Court determined in 2016, by granting Appellant summary judgment, that KPSRP's filings were deficient, KPSRP had a duty to supplement and revise the notice and its application materials.

In its 2017 filings, KPSRP has not materially changed its 2011 request for PUD authority for the remaining three Ridgetop residences and thirty-seven Highridge condominium units. The application narrative and additional site maps that KPSRP submitted were merely offered to supplement its remanded 2011 application. When an application under review on appeal is supplemented, but does not materially change the development project, it need not be considered as a new application. In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103. Because we conclude that the materials submitted by KPSRP in 2017 were merely supplements to the remanded application, particularly in response to the deficiencies identified by project opponents and found by the Court, and do not change the proposed development in any material way, we also conclude that the Planning Commission properly considered all the materials submitted when addressing the remanded 2011 application.

Second, we understand there to be an important distinction between the authority of KPSRP's prior PUD approvals, which were limited to a four-year term, and the conditions that the Planning Commission placed upon the developments, which run with the land. Each of the Planning Commission decisions has a similar continuation clause for the stated conditions. This distinction is logical, since when the construction of a permitted development is completed, the conditions of its approval do not evaporate, even after a PUD term expires. Such conditions, including landscaping and tree removal conditions, are meant to continue long after the PUD authority expires. Thus, we conclude that the generalization Appellant sometimes uses in its post-trial briefing—something to the effect that the permit has expired—is a too-simplistic and misleading statement when attempting to discern the necessary distinction between the term of a PUD's authority and the conditions that continually run with the land.

Third, Appellant makes much of the fact that when KPSRP requested that the Planning Commission conduct hearings on the Court-mandated remanded 2011 application, and submitted additional materials in support of that remanded request, the Town Planner accepted the revised application and supporting materials and assigned #17-003 to those filings, for the purpose of "record keeping and permit tracking purposes." See Highridge/Ridgetop PUD Approval, No. 17-003 Decision at 1 (Killington Planning Comm'n Apr. 26, 2017). In fact, the Planning Commission specifically noted in its decision on the remanded application that "Application 17-003 is a court ordered re-hearing of Application 11-005." Id. We received no testimony or other evidence to contradict these representations. And yet, Appellant would have us ignore this representation, as well as the representations in the revised hearing notice, which specifically gives notice that the hearing would be conducted on a Court-directed remand of the 2011 application. We decline to follow Appellant's suggestion, since it is unsupported by credible facts.

Lastly, we note that Appellant makes much of the fact that KPSRP "waited over a year" after this Court's 2016 Decision before it requested that the Planning Commission conduct a review of the remanded PUD application. We have some understanding of the time and effort that must be expended to complete the assembly of materials and witnesses for a land use application, particularly one which has seen opposition and litigation. Further, as both parties note, this Court did not set a deadline for when KPSRP was allowed to submit its materials and request a Commission hearing on its remanded PUD application. Thus, while the year-long wait may have seemed long, it was not in violation of the Court's remand directive.

In making this argument, Appellant also refers the Court to the Vermont Administrative Procedure Act (3 V.S.A. § 800 et. seq.; "VAPA"), particularly the provisions of the Act relating to "licenses" and the renewals of those licenses. However, Appellant fails to provide statutory authority for how the VAPA governs municipal land use proceedings, and our own research can find none. We therefore conclude that the VAPA is not relevant to the pending PUD application in this regard.

For all these reasons, we conclude that the Planning Commission, with KPSRP's assistance, properly revised the hearing notice for the Court-directed remanded 2011 application, and that

its submission of additional materials to the Planning Commission in anticipation of its 2017 re-hearing did not transform KPSRP's 2011 remanded application into a new application. We also conclude that the Town Planner's assignment of #17-003 to the revised application and supporting materials that KPSRP submitted in anticipation of the Planning Commission's re-hearing on the remanded 2011 application did not convert that into a new application. Such a transformation would have been in violation of this Court's 2016 directive and would have been contrary to KPSRP's and the Planning Commission's specific representations.

For all these reasons, we conclude that KPSRP's remanded 2011 application, as supplements by its 2017 materials, conforms with Regulations § 505(1).

Standards and Conditions #2 directs that the Planning Commission "shall hold at least one public hearing, upon public notice, prior to approval." Regulations § 505(2). The Planning Commission did just that: after revising the notice of its hearing on the remanded 2011 application, pursuant to this Court's directive, the Commission caused the revised notice to be published and conducted two public hearings, on April 12 and 26, 2017. After completing that second hearing, the Commission approved and issued its Decision. Id. No credible evidence was offered to refute these representations. We therefore conclude that KPSRP has provided convincing evidence that it satisfied Regulations § 502(2).

Standards and Conditions #3 notes that land development "may be commenced through a Planned Unit Development for those uses and under those requirements which are specified in the Tables of Section 240 as permitted in [a] PUD." Regulations § 502(3). The development KPSRP proposes is a completion of previously authorized residential developments on lots that conform to the minimum lot size and minimum size per dwelling unit requirements for PUDs contained in Regulations § 240. All proposed setbacks for the Highridge development, and all proposed setbacks for the Ridgetop development, after the modification discussed above, conform to the § 240 setback minimum requirements. We therefore conclude that KPSRP's proposed PUD completions of the Ridgetop and Highridge developments conform with Regulations § 505(3).

Standards and Conditions #4 appears inapplicable to the pending PUD application, since it concerns the use of undersized PUD lots, particularly in the R-1 District. Regulations § 505(4).

Since both developments will be completed on lots that exceed the minimum lot size, we conclude that the proposed PUD completion conforms with Regulations § 505(4).

Standards and Conditions #5 concerns side and rear setback limitations, and authorizes the Planning Commission in the first instance, and this Court on appeal, to "increase or decrease the setback requirements . . . [when] the special circumstances of a proposed development would make such requirement inappropriate." Regulations § 505(5). We discussed KPSRP's request to reduce the side and rear setback limitations for the completion of the Ridgetop development in our analysis of conformance with Regulations § 240 above and concluded that KPSRP's setback reduction request was appropriate. For these same reasons, we conclude that the proposed completion of the Ridgetop and Highridge PUD developments conforms with Regulations § 505(5).

Standards and Conditions #6 appears to be written in anticipation of developments such as Highridge and Ridgetop. Whereas the Highridge development, assessed alone, evidences a tighter density than required by Regulations § 240 (i.e., no less than 20,000 square feet of land for each existing or proposed unit), the Ridgetop development has a much less dense concentration. When assessed together, which is the way this application (and all prior applications) presented the combined developments, under one PUD proposal, the combined PUD conforms to the minimum size per dwelling unit required under Regulations § 240. We therefore conclude that the proposed completion of the Ridgetop and Highridge PUD developments conforms with Regulations § 505(6).

Standards and Conditions #7 authorizes the Planning Commission (or this Court on appeal) to "issue Planned Unit Development approval for a proposed development for a specific period of time, not to exceed four (4) years." Regulations § 505(7). During our *de novo* hearing on the remanded application, the Town Planner recommended that this Court approve a four-year term for this proposed PUD completion of the Ridgeway and Highridge developments. We received no evidence or argument as to why such a term would not be appropriate. We therefore conclude that the authority to complete these PUD developments shall run for a period of four years. Given the extended litigation concerning Application #11-005, we direct that this four-year term shall begin upon the final adjudication of this litigation.

Appellant takes issue with the fact that, particularly in KPSRP's submission to supplement the 2011 application, KPSRP did not specify a time period for the duration of the PUD authority. While this may be true, we do not perceive this to be a fatal flaw in KPSRP's request. First, we note that Regulations § 505(7) does not require that an applicant specify a duration period in its application. Rather, this section places the duty on the Planning Commission (and this Court on appeal) to specify the duration of the PUD approval. Second, since we must consider the pending remanded application in a *de novo* hearing, we consider all the evidence presented anew, and render our legal determinations after the evidentiary hearing is closed. V.R.E.C.P. 5(g). During our *de novo* hearing we received evidence and legal arguments that the PUD approval term should be four years. Since such a term is authorized by Regulations § 505(7), we grant that request. For these same reasons, we conclude that proposed completion of the Ridgetop and Highridge PUD developments conforms with Regulations § 505(7).

Standards and Conditions #8 appears inapplicable to the pending remanded application, since the completion of the proposed developments only involve one zoning district. We therefore conclude that the application conforms to Regulations § 505(8).

Standards and Conditions #9 speaks to how any PUD proposal that includes a mixture of commercial and residential uses should be "arranged." Regulations § 505(9). Since the pending remanded application only proposes residential uses, and proposes no commercial uses, we conclude that Regulation § 505(9) is inapplicable to the pending application.

Standards and Conditions #10 requires that "[r]oadways, parking and unloading facilities shall be designed and constructed so as not to cause unreasonable highway congestion or unsafe traffic conditions." Regulations § 505(10). The roadways and parking areas proposed for both developments (a preliminary showing for the Highridge development) are presented on Maps B, C, and D that are attached to the Application #17-003 support materials (Exhibit I). These maps evidence the existing roadways and parking areas for the already constructed and to-be-constructed residences and condominium units in each development.

Our consideration under subsection (10) is made easier by the fact that all of the access roads in the Ridgetop development and nearly all of the access roads in the Highridge development are already constructed and maintained, pursuant to prior PUD and site plan

approvals. KPSRP offered trial testimony that these roadways and parking areas are safe, and we did not receive any evidence contradicting that position.

To the extent that KPSRP's proposed additional access roads and parking areas in the Highridge development are revised, KPSRP pledges to provide detailed final plans in its future site plan and zoning permit applications. We therefore conclude that the three remaining residences in the Ridgeway development may be constructed as proposed, and direct that no construction of the proposed Highridge condominium buildings and units may begin until after KPSRP applies for and receives final site plan approval and a zoning permit.

With this condition, we conclude that the proposed completion of the Ridgetop and Highridge developments conforms with Regulations § 505(10).

Standards and Conditions #11 requires a PUD applicant to show that the proposed development is supported by adequate water and utility services, and that "all sewage and other effluent disposal shall be designed so it will not become a public health hazard." Regulations § 505(11). KPSRP presented uncontradicted testimony that the three remaining residences in the Ridgetop development will be served by water supply and wastewater treatment systems pursuant to a current ANR permit. As to the remaining thirty-seven condominium units at Highridge, KPSRP represents that it will apply for and receive an updated ANR water supply and wastewater treatment permit prior to the commencement of construction of the remaining units. We will therefore condition our PUD approval of the Highridge completion upon KPSRP or its successors applying for and receiving a final (i.e., one that survives any timely appeal) ANR permit.

For these reasons, and with the above condition, we conclude that the development completion proposed in the remanded application for Ridgetop and Highridge conform with Regulations § 505(11).

Standards and Conditions #12 requires that "unique natural features of the site" shall be preserved. Given the location of the Highridge and Ridgetop developments, we have no doubt that their sites include beautiful natural features. However, the only "unique" natural feature identified on either site is an existing wetland near the southwestern boundary of the Ridgetop development. This wetland is located outside of three existing Ridgetop residences. The three

remaining Ridgetop residences that are proposed in this PUD application are some distance away from the wetland. In any event, KPSRP pledges to maintain a 25-foot vegetative buffer around the wetland, in which a "Do Not Disturb" sign will be maintained.

For these reasons, we conclude that the proposed development detailed in the pending remanded application conforms with Regulations § 505(12).

Standards and Conditions #13 appears to not be applicable to the remanded PUD application, since that provision only governs developments that include municipal lands. These developments, existing or proposed, contain no municipal lands. We therefore conclude that the proposed development detailed in the pending remanded application conforms with Regulations § 505(13).

Standards and Conditions #14 allows the Planning Commission (and this Court on appeal) to "attach such reasonable conditions and safeguards as may be necessary to implement the purposes of [state and municipal land use laws], in order to protect the public health, safety and welfare . . .[, including] screening and landscaping." Regulations § 505(14). Our analysis under this subsection (14) is made somewhat easier by the fact that most of the Ridgetop development and half of the Highridge development have already been constructed, pursuant to prior PUD and site plan approvals, as well as zoning permits and the necessary state permits.

Each prior PUD approval includes a condition that "[a]ll conditions of past Planned Unit Development approvals and Site Plan Review approvals for Ridgetop and Highridge not specifically changed by these approvals shall remain in full force and effect." KPSRP Exhibit E at 8. The conditions in the prior PUD approvals included requirements concerning bus shelters, emergency vehicle turning areas, fire hydrants, and requirements to clearly mark the boundary lines for each building lot. Id. We intend to replicate this condition, to memorialize that all prior PUD approval conditions continue to run with the land.[7] We further note that we have already determined that KPSRP shall be required to comply with a condition that it must apply for and receive Site Plan review approval and zoning permits that detail any additional necessary landscaping, traffic, parking and other necessary provisions.

---

[7] With the exception of Condition 8 from the PUD #06-098 approval concerning tree cutting on the Ridgetop development, which we determined should be eliminated in our analysis of conformance with Regulations § 240, above.

With these conditions, we conclude that the pending remanded application conforms with Regulations § 505(14).

Standards and Conditions #15 authorizes the Town, in its discretion, to require "a performance bond with a good and sufficient surety, in an amount to cover the full costs of public or private roadways and utility lines . . . ." Regulations § 505(15). Since the majority of the roadways, utility lines, and fire hydrants were already constructed when the prior portions of the Ridgetop and Highridge developments were completed, we do not see much utility in a bond requirement. Further, we received no presentation from the Town that it wished to require a bond. We therefore decline to require a bond and conclude that the pending remanded application conforms with Regulations § 505(15).

Standards and Conditions #16 states a somewhat curious provision, namely that the Planning Commission, when reviewing a PUD application, shall "have the same powers" that it has when considering a site plan application in regard to "traffic access, circulation and parking, landscaping and screening." Regulations § 505(16). We note that the prior PUD approvals concerning the portions of the Ridgetop and Highridge developments that have already been constructed addressed traffic access, circulations, parking, landscaping and screening. The few additional items in this regard that need to be resolved will be addressed when KPSRP applies for site plan approval and a zoning permit authorizing construction of the Highridge units. As to the three remaining Ridgetop residences, we see no need to impose further conditions concerning traffic access, circulation, parking, landscaping, and screening, since all roads have already been constructed, and all the building lots have been identified, with driveways, parking, and landscaping. We therefore decline to impose additional conditions, other than those already discussed above, and conclude that the pending remanded application conforms with Regulations § 505(16).

Standards and Conditions #17 reiterates a reality we have referenced above: that KPSRP must apply for and receive a final site plan approval and zoning permit for the Highridge development, and that such approvals and permits "shall only be issued if the proposed land development complies with all applicable provisions and conditions of the PUD approval and the applicable requirements of these Zoning Regulations . . . ." Regulations § 505(17). KPSRP has

already received site plan approval for the three remaining Ridgetop residences, and has advised that it intends to sell the building sites to individual owners who will complete construction of their individual residences.[8] These future owners will be responsible for securing any necessary additional municipal or state permits.

For all these reasons, we conclude that the pending remanded application conforms with Regulations § 505(17).

Standards and Conditions #18 requires that "the Zoning Administrator shall issue a [zoning] permit under Section 610D" if one is applied for concerning lands already reviewed by the Planning Commission, and the Planning Commission issued approval of the PUD application. Regulations § 505(18). This subsection continues by stating that if an application is made for a zoning permit that "is in any way different from the land development approved in the PUD approval," the Zoning Administrator shall deny the zoning permit application. Id. KPSRP pledges to apply for a zoning permit for land development that complies with all applicable terms and conditions of any PUD approval issued in these or prior proceedings. Nonetheless, the Zoning Administrator will need to make their own determination, if and when they receive a zoning permit application. At this stage of these development approval proceedings, we conclude that KPSRP has thus far complied with Regulations § 505(18), and we leave it to the appropriate Town officials to comply with this regulatory provision.

For all these reasons, we conclude that KPSRP's remanded application for PUD approval for the completion of the Ridgetop and Highridge developments conforms with all applicable provisions of Regulations § 505. We therefore answer Appellant's Question 1(a) in the affirmative.

**Question 2: Is PUD Application #17-003 a new application, or a re-noticing of PUD application #11-005?**

We have essentially already addressed this issue in our discussion above of the pending application's conformance with Regulations § 505(1). Pursuant to this Court's 2016 directive,

_____

[8] KPSRP seeks renewal of its previous Ridgetop site plan application (see PUD #06-098 and Site Plan Review Approval #06-099) in the pending remanded application. While it is unclear that the future owners of the Ridgetop building lots will need further municipal or state permits, we understand that they may be required to secure a municipal zoning permit for their individual residences, at the very least.

KPSRP worked with the Town Planner to revise the 2011 hearing notice that the Court determined to be deficient and scheduled a new hearing before the Planning Commission on the remanded 2011 application. Due to the Court's determination that the 2011 hearing notice was deficient, KPSRP supplemented its application materials. The Town Planner assigned Application #17-003 to those materials, solely for record keeping and administrative purposes. The revised notice specifically referenced that the Planning Commission would be conducting a hearing on the remanded 2011 application and 2017 supplemental materials, that the applicable application date was in March of 2011, and the Commission proceedings would be governed by the Regulations in effect as of 2011. At that hearing, the Planning Commission followed the directives summarized in the revised hearing notice, and we have repeated that procedure in this *de novo* appeal of the remanded application.

For all these reasons, we conclude that the 2017 proceedings before the Planning Commission, and our 2018 merits hearing in this *de novo* appeal, <u>were not</u> on a new application, but rather on the remanded 2011 application, pursuant to the revised hearing notice.

**Question 3:** **Does PUD Application #17-003 relate back to the original filing date of PUD application #11-005?**

For all the reasons already stated, we answer Appellant's Question 3 in this manner: the application considered by the Planning Commission in 2017 and by this Court in this *de novo* appeal relates back to the original filing date of Application #11-005 in March of 2011, as directed by this Court in its 2016 Decision.

**Question 4:** **Can PUD Application #17-003 seek renewal of and rely on findings of the #88-169 PUD approval, which the Environmental Division of the Superior Court ruled had expired in 1992?**

By this Question, it appears that Appellant has a misunderstanding of and is confused by the distinction between the terms of a PUD approval, and the conditions placed upon a PUD development when it receives that approval. We have discussed these separate concepts above but elaborate further on them below.

Under these Regulations, and all other zoning regulations that are enacted pursuant to the enabling statute—24 V.S.A. § 4417— a PUD approval may be authorized for a specific term. Under the 2008 Regulations that governed this remanded application, the PUD had to be

authorized for a specific term of not more than four years. Regulations § 505(7). At trial, KPSRP requested that this PUD remanded application result in an approval that lasts four years, which we have approved above. If our Decision here is not appealed, that PUD approval will continue until June of 2023.

If KPSRP completes all the anticipated construction in the Ridgetop and Highridge developments prior to that date, then there will be no need for a further renewal of its PUD approval. However, that does not mean that all the conditions imposed by this PUD approval will evaporate. Rather, the conditions established by this Decision, including the condition that incorporates the conditions imposed by the prior PUD approvals that have not been expressly superseded, will continue as encumbrances upon these two developments. KPSRP, its successors, and assigns will continue to be obligated to abide by these conditions. The expiration of a PUD approval does not alleviate an owner from its obligation to abide by conditions that run with the land.

We provide this explanation as a foundation to our answer to Appellant's Question 4. First, we note that while this Court in 1992 concluded that the initial PUD approval for the Ridgetop and Highridge developments (PUD #88-169) did expire in 1992, the Court did not rule that the findings and conditions imposed upon these developments evaporated in 1992. Rather, they continue to run with the land because the developments were partially constructed. We are not allowing KPSRP to seek "renewal" of the findings and conditions of PUD #88-169. Rather, we have reminded KPSRP that the previously established findings and conditions continue to run with this land and serve as encumbrances upon this land. That is the sole rationale for our condition below that incorporates all conditions from prior PUD approvals that have not been specifically superseded.

This renewed application has not sought "renewal" of prior PUD approvals. We have concluded here, based upon the credible evidence presented and our analysis of the applicable law, that KPSRP is entitled to approval of its remanded application (Application #11-005) as supplemented by the materials of Application #17-003, because it has presented credible evidence, not effectively contradicted by its opponents, that its pending PUD application conforms with the applicable provisions of the Regulations.

## Conclusions of Law

For all the reasons stated above, we conclude that KPSRP's remanded application (Application #11-005), as supplemented by the materials contained in Application #17-003, conforms to all applicable provisions of the Town of Killington Zoning Regulations and should be **APPROVED,** subject to the following conditions:

1. This PUD approval is valid for four years and shall expire four years after this Court's original PUD approval Decision became final on June 6, 2019.

2. Any conditions from previous Highridge/Ridgetop PUD approvals not specifically changed by this PUD approval shall remain in full force and effect.

3. Prior to any construction on the Highridge section of the PUD, the Applicant shall apply for and receive Site Plan Review approval and a zoning permit. The Applicant shall detail all additional or modified landscaping, building siting, traffic, parking, and other necessary provisions for any required Site Plan Review and zoning permit approval.[9]

4. The Applicant shall apply for and receive updated ANR water supply and wastewater treatment permits for the Highridge section of the PUD prior to the commencement of construction of the remaining Highridge units.

5. The Applicant shall consult with Killington Fire and Rescue concerning the design of the Highridge parking lot and fire hydrant locations prior to the submission of an application for Site Plan Review and shall incorporate all reasonable suggestions from Killington Fire and Rescue into that application.

6. This PUD approval shall allow the three remaining undeveloped Ridgetop lots to be developed in conformance with this PUD approval and the pre-existing PUD and Site Plan Review approvals.

7. The following condition from PUD approval #06-098 is made null and void by this PUD approval: "Prior to the removal of any trees from Ridgetop common land the Ridgetop Landowners Association shall submit a landscaping plan to the Planning Commission for their approval. No trees shall be removed from the common land without Commission approval with the exception of trees which pose an imminent threat to health or public safety."

8. This is a summary of conditions from the above Findings of Fact and Conclusions of Law. Conditions contained in the Findings or Conclusions but not in this summary shall also be conditions of this approval.

9. This PUD approval and conditions shall be binding upon KPSRP, its successors and assigns.

---

[9] The Court altered this Condition 3, along with Condition 4 below, for clarity in response to Appellant's July 2, 2019 V.R.C.P. 59(e) motion. We also made minor adjustments to Conditions 1 and 5.

We further answer Appellant's Questions 2, 3, and 4 in KPSRP's favor, since we have concluded that:

(2) Application #17-003 was not a new application, but rather constituted supplemental materials in support of Application #11-005, which this Court had previously remanded back to the Planning Commission for re-noticing and reconsideration;

(3) the remanded application and supporting materials did not constitute a new application; and

(4) this PUD approval properly incorporates by reference all the prior PUD findings and conditions that encumber these lands, except where specifically noted.

This completes the current proceedings before this Court concerning the pending remanded application. An Altered Judgment Order accompanies this Altered Merits Decision.

Electronically signed on August 08, 2019 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division