2014 VT 120

# Highridge Condominium Owners Association v. Killington/Pico Ski Resort Partners, LLC

[111 A.3d 427]

No. 14-066

Present: **Dooley, Skoglund and Robinson, JJ., and Hayes and Zonay, Supr. JJ., Specially Assigned**

Opinion Filed November 14, 2014

*Christina A. Jensen* and *Carl H. Lisman* of *Lisman Leckerling, P.C.*, Burlington, for Plaintiff-Appellee.

*Allan R. Keyes* and *Erin J. Gilmore* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

¶ 1. **Robinson, J.** This case arises from a dispute between developer Killington/Pico Ski Resort Partners, LLC ("K/P") and the Highridge Condominium Owners Association concerning developer's proposal to construct additional units in the Highridge condominium development in Killington.[1] On cross-motions for summary judgment, the trial court granted declaratory relief to the Association on the ground that the declaration of condominium did not authorize the original developer to add additional units unilaterally, and thus the alleged successor to the original developer's rights, K/P, also had no such right. We conclude that K/P is the successor in interest to the original developer with respect to development rights, and is entitled to construct the proposed additional units under the declaration of condominium. Accordingly, we reverse.

I.

¶ 2. The undisputed facts are as follows. In 1983, the North Ridge Development Corporation created Highridge Condominiums by a declaration of condominium made under the Vermont Condominium Ownership Act, 27 V.S.A. §§ 1301-1329. North Ridge's stated intent in the declaration was to "develop and build a total of not more than two hundred fifty (250) Condominium Units, with related road, parking areas, utilities, sewer and water lines, and other common elements, amenities and facilities determined by Declarant to be necessary or convenient for the condominium development." "In contemplation of" this expressed intention, North Ridge submitted its right, title and interest in the land in question to condominium ownership.

¶ 3. The declaration expresses North Ridge's intent, as declarant, "to construct not more than two hundred fifty (250) Condominium Units in phases, with those Units reflected in the Interim Schedule of Percentage Interests filed with this Declaration to be constructed in the first phase and the remaining Units to be constructed in subsequent phases as and when determined by Declarant." The declaration describes the formula by which

---

[1] Older documents in the record refer to the Town of Sherburne. In 1999, the Town of Sherburne was renamed the Town of Killington, following a petition by the people of Sherburne to the Legislature. 1999, No. M-3, § 3.

each unit owner's undivided interest in the common areas is to be calculated, and provides:

> Notwithstanding any contrary provision of this Declaration, if and in the event additional phases are developed or other lands are annexed to the Project, Declarant expressly reserves to itself, its successors and assigns, the right to amend this Declaration from time to time so that the Interim and/or Final Percentage Interest of a Unit Owner may be adjusted to reflect the additional Units, which reservation is an express condition of ownership of Units in the condominium and is senior to the conveyance and/or mortgage of such Units; by acceptance of deeds of their Units, Unit Owners shall be deemed to have designated and appointed Declarant as their attorney in fact for the sole, limited and exclusive purpose of amending this Declaration in accordance with this section, so that an Amendment filed by Declarant pursuant hereto shall result in the amendment and reduction of such fractional interest without further action or consent by Unit Owners. . . . The manner and formula for expressing percentage interest of Unit Owners shall be consistently applied throughout each phase of the development.

¶ 4. The declaration contemplates that upon construction of the final phase of the development, the declarant shall file a "Schedule of Final Percentage Interest." In furtherance of the phased development plan, North Ridge also reserved the rights to add all or a portion of a specified parcel to the condominium as if it were part of the dedication;[2] to modify the site plan and floor plan in accordance with the phased development; and to amend state and local land-use and development permits as necessary, in its sole discretion, to permit the development and construction of subsequent phases of the project.

¶ 5. The declaration expressly provides: "This Declaration shall be binding upon and inure to the benefit of Declarant and each and every party acquiring ownership or an interest in any Unit

---

[2] Originally, Highridge consisted of a ten-acre parcel that was conveyed to the corporation by a deed of July 21, 1983; the following year, a 26.64-acre parcel was added through conveyance to North Ridge in a deed of July 31, 1984, bringing the total size of the site to 36.64 acres.

subject to this Declaration and their heirs, successors, or assigns." The declaration includes several other express reservations by North Ridge that are not directly relevant to the issues in this case.

¶ 6. The declaration has been amended eleven times. Most of these amendments adjusted the interim percentage interests of condominium owners to reflect North Ridge's construction of additional units. The most recent amendment was executed in May 1990, five months after the Association took control of the condominium in accordance with the declaration. This amendment revised the interim percentage-ownership interest schedule for a sixth time, to account for the construction of additional units.

¶ 7. In April 1990, Vermont National Bank ("VNB"), which held a mortgage on the Highridge Condominiums property, filed a complaint for foreclosure against North Ridge. In March 1991, VNB secured a judgment and decree of foreclosure in Highridge. By a limited warranty deed executed in June 1995, VNB conveyed the lands that it received through the March 1991 foreclosure to Killington, Ltd., specifically identifying the judgment order and decree of foreclosure as the source of the VNB's interest in the property. This deed stated that it conveyed "[a]ll of the rights, title, and interest as Declarant in the Highridge Condominiums" to Killington, Ltd. Shortly thereafter, in August 1995, North Ridge executed a quitclaim deed directly to Killington, Ltd., conveying all of its rights, title and interest as declarant in the Highridge Condominiums. In May 2007, Killington, Ltd. conveyed its interest in Highridge to K/P by warranty deed.[3] This deed traced Killington Ltd.'s title through the 1991 foreclosure decree and the VNB-to-Killington, Ltd. deed.

¶ 8. The current dispute between K/P and the Association arose in March 2011, when K/P applied for approval from the Killington Planning Commission to build additional units at Highridge. The Association brought an action for declaratory judgment, 12 V.S.A. § 4711, asserting that (1) the declaration did not reserve any rights to additional development, and (2) even if the declaration

---

[3] The deed's grantees were actually MTB Killington, LLC, AMSC Killington, LLC, and SP II Resort LLC as tenants in common with 13.6%, 66.4%, and 20% interests, respectively. Both parties treat these entities as synonymous with K/P, and we follow suit.

provided for additional development rights, K/P is not a successor to North Ridge for purposes of the right to build additional units.[4]

¶ 9. On cross-motions for summary judgment, the trial court ruled for the Association on the ground that the original declaration of condominium did not give the declarant, then North Ridge, the power to build additional units without the Association's consent. The court noted that the declaration "does not expressly state that [North Ridge] reserves the right to construct additional units at any time without the consent of the Association . . . [but] only reserves the right to alter each unit owner's percentage interest 'if and in the event that additional phases are developed or other lands are annexed to the project.' " Noting the presence of other clauses in the declaration in which the original developer "expressly reserved rights to itself," and the absence of an explicit mention of reserved rights for further construction, the trial court concluded that North Ridge "therefore did not reserve to itself the unilateral right to construct additional units." The court also found persuasive the fact that no additional units had been built at Highridge since 1990, concluding that this twenty-one year gap "between the last construction of new units and the assertion of the right to build additional units underlines that the parties did not, at least until K/P asserted its position in 2011, contemplate the construction of additional units." K/P appealed.

## II.

¶ 10. No facts are in dispute, and we review the trial court's grant of summary judgment "de novo under the same standard of review as the trial court." *Madowitz v. The Woods at Killington Owners' Ass'n*, 2010 VT 37, ¶ 9, 188 Vt. 197, 6 A.3d 1117. The critical questions in this case — the meaning and effect of the declaration of condominium, and the impact of the foreclosure on the chain of title with respect to the reservations in the declaration — are legal questions. *Creed v. Clogston*, 2004 VT 34, ¶ 13, 176 Vt. 436, 852 A.2d 577 (interpretation of deed is question of law which we review de novo); *Golden Key, LLC v. Harper*, 170 Vt. 641, 641, 751 A.2d 798, 799 (2000) (mem.) (interpretation of provision of Condominium Ownership Act is question of law).

---

[4] The Association also argued below that even if K/P did succeed to the original owner's rights and those rights included the right to additional development, such rights expired or were terminated. It has not pressed that argument on appeal.

¶ 11. The first question is whether the original declarant, North Ridge, retained the right to develop up to 250 units unilaterally, without the consent of the existing owners. If so, the second question is whether K/P has acquired those development rights.

A.

¶ 12. The Association argues that the underlying declaration did not allow the original declarant, North Ridge, to build additional units without its consent. In particular, the Association argues that the right to build additional units is distinct from the right to readjust unit owners' percentage interests in the common spaces, and a declarant must expressly reserve such development rights in order to maintain them. We reject the Association's argument, and find that the terms of the original declaration permit the declarant to build up to 250 units without further consent from the Association.

¶ 13. The statute pursuant to which the declaration of condominium was executed offers little guidance. The declaration of condominium for Highridge was declared under the Vermont Condominium Ownership Act, 27 V.S.A. §§ 1301-1329 (effective January 23, 1968), a first-generation condominium statute which does not address declarant expansion rights.[5]

¶ 14. ■ Because a declaration of condominium is in the nature of a contract, we look to the intent of the contracting parties, " 'which we presume is reflected in the contract's language when that language is clear.' " *Madowitz*, 2010 VT 37, ¶ 12 (quoting *R&G Props., Inc. v. Column Fin., Inc.*, 2008 VT 113, ¶ 17, 184 Vt. 494, 968 A.2d 286). We "give effect to the intent of the parties as

---

[5] The statute did require that the declaration state the value of each site, and the percentage of undivided interest in the common areas and facilities appertaining to each site, 27 V.S.A. § 1311(6), and further provided that "[t]he percentage of the undivided interest of each apartment or site owner in the common areas and facilities as expressed in the declaration shall have a permanent character." *Id.* § 1306(b). But it contemplated that the percentage interests could be changed by consent of all the site owners expressed in an amended declaration. *Id.* This Court affirmed in *Madowitz* that a developer can secure the statutorily required consent of the owners in advance, as a condition of purchasing a unit. 2010 VT 37, ¶¶ 13-15. This procedure helps facilitate phased development. *Id.* The newer Vermont Common Interest Ownership Act, 27A V.S.A. §§ 1-101 to 4-120 (effective January 1, 1999), addresses future development with more specificity. See, e.g., 27A V.S.A. § 2-105(a)(4) (declaration must contain a "statement of the maximum number of units which the declarant reserves the right to create").

it is expressed in their writing," *Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, 190 Vt. 106, 35 A.3d 113, considering the instrument "as a whole and giv[ing] effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible," construing it so that "the intent of the parties" — or, in this case, the declarant as executor — controls. *DeGraff v. Burnett*, 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotations omitted).

¶ 15. ▮ An ordinary person reading this declaration would easily understand that it contemplates declarant's addition of new units, and does not require the Association's approval. The declaration specifically provides that the declarant "intends to construct not more than two hundred fifty (250) condominium units in phases . . . as and when determined by Declarant." The declaration establishes unit owners' consent to readjustment of their percentage interests in the common areas and facilities to accommodate the future construction of additional units as a condition of their ownership; reserves to the declarant the right to make those adjustments unilaterally; and lays out the procedure whereby the declarant is to adjust those interests with each successive round of development. And the declaration reserves the declarant's rights to alter the site plans and seek permits to facilitate the contemplated phased development — all on its own without further consent by the Association or individual unit owners.

¶ 16. The Association has noted that prior amendments to the declaration to reflect the addition of new units occurred before it was formed and took over powers with respect to the existing condominiums, suggesting that after the Association's formation such amendments require its approval. Nothing in the declaration or the Condominium Ownership Act, 27 V.S.A. § 1301 et seq., gives the Association such a power or a power to block future development of land not within the condominium common area. The condominium site owners, and not the Association, own undivided interests in the common areas. 27 V.S.A. §§ 1305, 1306(a). The Association's powers relate to the "administration of the property." *Id.* § 1319(12). Nothing in the declaration's provisions concerning the powers of the owners' association suggests that when the Association assumes the enumerated powers listed in the declaration, the Association also acquires the right to develop, or block development of the remaining units contemplated in the declaration. We conclude that the presence of the Association, and the timing of its formation, is irrelevant to the issue before us.

¶ 17. Considering the instrument as a whole to give effect to its intent and purpose, *DeGraff*, 2007 VT 95, ¶ 20, and considering the "'obvious purpose'" of the drafter of the instrument, *Myrtle Rebekah Lodge #6 v. Cavendish Library Trs.*, 169 Vt. 553, 555, 726 A.2d 86, 88 (1999) (mem.) (quoting *Hoadley v. Hoadley*, 114 Vt. 75, 80, 39 A.2d 769, 773 (1944)), we conclude that the declarant clearly reserved to itself the right to expand the condominium up to the stated maximum number of units, and to adjust fractional ownership of the common facilities correspondingly.

¶ 18. This case is on all fours with *Madowitz v. The Woods at Killington Owners' Ass'n*. In *Madowitz*, like the present case, a condominium owners' association challenged a developer's proposal to further develop a condominium complex. 2010 VT 37, ¶ 1. There, as here, the "unambiguous language" of the declaration "explicitly grants to developers the necessary consent of each unit owner to additions to the development that would result in a change in each owner's percentage interest in the common areas and facilities," so that "the designated value of each unit would change upon completion of each subsequent phase of development." *Id.* ¶ 13. Given this clear expression in the declaration, we concluded that the developer had "the right to continue with their phased development plans," and "[n]o further contracts or agreements were necessary to effect the intent of the parties that the developers continue phased development of the [development]." *Id.* ¶ 15. The language of the declaration that we relied on in *Madowitz* — reserving the declarant's right to unilaterally adjust unit owners' fractional interests — was functionally the same as the language at issue here.

¶ 19. K/P's claim here is actually stronger than that of the developer in *Madowitz*. In *Madowitz*, a deed provision in 105 of the 107 conveyances from the original developer to unit owners, as well as powers of attorney executed by two unit owners, purported to place a ten-year limit on developer's rights, in direct contradiction to the language of the declaration. *Id.* ¶¶ 16-22. We concluded that because declarations prevail over subsequent deeds and powers of attorney, the developer's rights to develop outlived the ten-year limit reflected in the deeds and powers of attorney. *Id.* ¶¶ 23-24.

¶ 20. Nor does the passage of time since the last round of development, and the fact that the development between 1985 and 1990 was always done "with the acquiescence of the Association,"

alter our analysis.[6] The development rights established in the declaration were not time-limited. Contrast with 27A V.S.A. § 2-105(a)(8) (provision of the Vermont Uniform Common Interest Ownership Act of 1994 requiring declaration for a common-interest community to include description of various declarant rights, including reserved development rights, "and a time limit within which each right shall be exercised").

¶ 21. ■ The Association's acquiescence to North Ridge's early phases of development is immaterial. As we recognized in *Madowitz*, "a declaration or 'master deed' effectively trumps individual deed restrictions," and thus limitations on development rights in subsequent deeds do not undercut declarants' development rights as set forth in the declaration. 2010 VT 37, ¶ 23. Given that limitations on future development rights written into subsequent deeds must give way to the declaration itself, mere informal suppositions that expansion will not occur in the future simply because it has not occurred in the recent past most certainly cannot alter the rights established in the declaration.

¶ 22. ■ Moreover, while course of performance may be relevant in interpreting an ambiguous contract, see, e.g., *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 577-80, 556 A.2d 81, 83-85 (1988); Restatement (Second) of Contracts §§ 202(4)-(5), 212 cmt. b (1981), the declaration in this case is unambiguous. See *In re Rosenberg*, 2010 VT 76, ¶ 14, 188 Vt. 598, 11 A.3d 651 (mem.) ("Although we have recognized that in some instances an 'implied contractual provision may arise through established past practices,' a construction considering such extrinsic evidence may not proceed without first finding ambiguity in the contract.") (citation omitted); *Madowitz*, 2010 VT 37, ¶ 14 n.7 ("[T]he unit owners had constructive notice — through various declaration provisions — both that [the condominium] would be subject to future development and that the owners' percentage interest in the common areas would change as each new unit was added.").

### B.

¶ 23. The Association further argues that, assuming the original declarant had the right to build additional units, K/P did not succeed to that right. The Association points out that the original

---

[6] The trial court cited both of these facts in support of its conclusion.

declaration expressly reserved various specific rights not only to the original declarant, North Ridge, but also to its successors and assigns, but in the discussion of the declarant's intention to construct additional units in phases, by contrast, the declaration merely anticipates future construction "as and when determined by Declarant," with no reference to North Ridge's successors and assigns.[7]

¶ 24. ■ ■ We disagree, and find no difficulty in determining that the declaration provides for the original declarant's successor in interest to succeed to the declarant's development rights. The declaration expressly provides that the declaration "shall be binding upon and inure to the benefit of Declarant and each and every party acquiring ownership or an interest in any Unit subject to this Declaration *and their heirs, successors, or assigns*" (emphasis added). Moreover, the express reservation concerning development rights that is most pertinent to our analysis — the right to amend the declaration to adjust unit owners' respective percentage interests in the common areas and facilities to account for the construction of additional units — is expressly reserved to declarant and "its successors and assigns." When the meaning of a declaration is "clear and unambiguous, . . . 'the instrument must be given effect according to its terms.'" *Creed*, 2004 VT 34, ¶ 13 (quoting *Aiken v. Clark*, 117 Vt. 391, 393, 92 A.2d 620, 621 (1952)). Accordingly, we conclude that K/P has succeeded to the development rights reserved to the original declarant, North Ridge, in the declaration of condominium.

---

[7] The Association's argument on this point has morphed considerably since its motion for summary judgment before the trial court. Below, the Association argued that a purchaser of land from a bank following a foreclosure is not a successor or assign of the former owner's contractual development rights. The Association argued that because K/P traces its title to the Highridge Condominiums through the 1995 warranty deed from VNB to Killington, Ltd. and the 1991 foreclosure decree under which VNB acquired the property, K/P did not acquire the development rights to Highridge Condominiums through that chain of title. K/P countered that if VNB did not acquire the development rights to Highridge through the 1991 foreclosure, then K/P has succeeded to those rights through the 1995 quitclaim deed directly from North Ridge to Killington, Ltd. The Association has abandoned this formulation of the argument on appeal, and we need not reach the question of whether K/P acquired the development rights in question through the foreclosure/VNB deed chain or, alternatively, through the quitclaim deed directly from North Ridge.

¶ 25. In sum, we find that K/P is the successor-in-interest to North Ridge's rights under the declaration of condominium, and that those rights include the right to add units up to the 250-unit maximum expressed in the declaration without the consent of the Association.

*Reversed and remanded to the Superior Court, Civil Division, Rutland Unit, with instructions to enter judgment for Killington/ Pico Ski Resort Partners, LLC, declaring that it holds the right to add units to the Highridge Condominiums without Association consent, up to the 250-unit limit stated in the declaration.*