VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 24-CV-02617



| Barbara Ghia v. West Woods Condominium Association |
| --- |

# ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment; (#2)
              Cross Motion for Summary Judgment (#4);
Filer:        Rodney E. McPhee, Esq. (Motion #4)
              Susan J. Flynn, Esq.  (Motion #2)
Filed Date:   May 27, 2025;
              July 18, 2025

# DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In this dispute over development rights in a condominium, Plaintiff Barbara Ghia ("Plaintiff"), as successor-in-interest to James Ghia ("Ghia"), seeks declaratory judgment concerning the validity of several amendments to the original declaration, and seeks damages for slander of title, negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment/quantum meruit, promissory estoppel, and betterments against Defendant West Wood Condominium Association ("Defendant" or the "Association"). The parties have filed cross-motions for summary judgment.

## Summary Judgment Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." V.R.C.P. 56(a).  A fact is material only if it might affect the outcome of the case. *O'Brien v. Synnott*, 2013 VT 33, ¶ 9, 193 Vt. 546.  In assessing whether a genuine dispute as to any material fact exists, courts construe "the facts presented in the light most favorable to the nonmoving party," *Vanderbloom v. State, Agency of Transp.*, 2015 VT 103, ¶ 5, 200 Vt. 150, such that "the nonmoving party receives the benefit of all reasonable doubts and inferences," *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 9, 214 Vt. 269.  Courts therefore "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.

## Undisputed Material Facts

The following facts are undisputed for purposes of considering the motions for summary judgment unless otherwise noted. On May 12, 1988, Ghia recorded as declarant the Original Declaration of West Woods Condominium Association, contemplating six four-unit buildings, for a total of twenty-four units.

By 1990 Ghia had built three of the buildings for a total of twelve units. No further units have been built since then. The original Declaration provides that "[t]he Declaration may be amended by the vote of at least two-thirds in number of all the unit owners cast in person or by proxy at a meeting duly held in accordance with the provisions of this Declaration and the Bylaws adopted pursuant hereto; except nothing herein shall be deemed to affect the rights of the mortgagees of individual condominium units to consent to or limit amendments hereto as previously set forth herein." Exh. 1, § 17. The original Declaration sets forth plans that Ghia would construct a total of 24 units, with his development rights expiring if he had not constructed the units within seven years of the original Declaration. *Id*., §§ 3 and 7. The original Declaration provided for the units' percentage ownership in common areas and facilities as follows:

> The Condominium when completed shall consist of SIX buildings designated as follows:
> Building 1, containing FOUR units;
> Building 2, containing FOUR units;
> Building 3, containing FOUR units;
> Building 4, containing FOUR units;
> Building 5, containing FOUR units;
> Building 6, containing FOUR units.
> As a first phase the Declarant will construct only Building 1 containing a total of 4 units. Until such time as the Declarant constructs the remaining Buildings, each of the units in Building 1 shall have a 1/4th interest in the common areas and facilities. At such time as the additional five buildings are constructed, then upon the completion of said buildings, and the units contained therein, each such unit shall have a prorata share in the common areas and facilities with the other completed units in the common expenses and also in the common areas and facilities. In any event if the additional buildings are not constructed within seven years of the date hereof, then the developer shall lose the right to construct such additional unbuilt buildings and units, and the fractional interest of each unit constructed at the termination of that shall become fixed.

Exh. 1, § 3.

> It is anticipated by the declarant that the condominium will be comprised of 24 units each of which will have a 4.167% interest in the common elements and facilities and each of which will be

responsible for 4.167 percent of the common expenses at such time as all of the units have been constructed. It is the declarant's intention to construct the condominium in three phases, the first phase consisting of four (4) units in one building; the second phase consisting of eight (8) units in two buildings; and a third phase[] consisting of twelve (12) units in 3 three buildings. In the event the declarant has not completed construction of the additional units on the anniversary of this Declaration seven years hence the right of said Declarant to construct such additional units shall terminate and the percentage ownership of each of the units built on that date shall become fixed.

Exh. 1, § 7.

The original Declaration lists as "common areas and facilities" the land, foundations, columns, girders, beams, supports, main walls, roofs, halls, corridors, lobby, stairs, stairways, fire escapes, entrances, and exits of the building, parking areas, yards, garden, common storage spaces, installation of central services for power, light, gas and trash storage and removal, ducts, pipes, mains, utility lines and other common facilities existing for common use, all signs, exterior lighting and shrubbery, and all other part of the land and property necessary or convenient to its existence, maintenance and safety or normally in common use.  Exh. 1, § 2(d).

The Declaration defined the boundaries of the common elements and units as follows:

Annexed hereto and made a part hereof as Schedule B collectively are a series of Floor Plans showing all the units as built with their exterior dimensions. The units themselves however shall consist of the area and volume extending from the edge of the interior walls and from the top of the flooring exclusive of carpeting to the bottom of the ceiling.

Interior floor coverings and wall coverings, including carpeting, paint, and wall[]paper are not part of the common elements of the condominium.

Exh. 1, § 4.

On December 29, 1991, Ghia proposed, and the Board of Directors of the Association adopted, by at least 2/3 vote, resolutions ("1991 Director Resolutions" or, as amended, "1991 Amendment") to amend the Original Declaration.  The 1991 Amendment, in pertinent part, deleted the seven-year time limitations, specified that stain and wallpaper, appliances, light fixtures, kitchen and bathroom cabinets and trim are not common elements, and changed the month of the annual meetings from February to December.  Exh. 2.  The 1991 Amendment was then recorded on December 31, 1991.  Until this litigation, the Association has never challenged the validity of the 1991 Amendment.

In 2005, the local zoning regulations were amended, resulting in a reduction of the number of remaining units Ghia could construct from twelve to six units. Ghia sought to amend the Original Declaration again, this time to allow him to create six single-family residences ("West Wood Homes") instead of completing the three additional four-unit buildings. The Association noticed and convened a meeting, and on January 8, 2005, by a vote of nine-unit owners in favor, two against, and one no vote, the Association approved Ghia's proposal to construct the six West Wood Homes. The minutes from that meeting reflect that the Declaration requires a two-thirds vote to approve a change, and that the change passed.

William Zaremba, the president of the Association at the time, sought legal advice from Gregory Mauriello, who concluded that a vote to amend the Declaration by two-thirds would be valid. Exhs. 5 and 6. At a special meeting on July 23, 2005, the Association conducted a re-vote and approved an amended declaration by a vote of nine in favor, one against, and two absent. This amended declaration ("2007 Amended Declaration" or "2007 Amendment") was recorded on December 28, 2007. Exh. 8. Section 2 of the 2007 Amended Declaration provides that Ghia had discretion to construct the West Wood Homes. *Id*.

The 2007 Amendment divided existing common areas into "General Common Areas and Facilities," "Condominium Unit Common Areas and Facilities," and "Homes Common Areas and Facilities." *See* Exh. 8, § 4. It similarly divided general expenses from condominium unit common expenses and West Woods Home common expenses. *See id*.

The 2007 Amendment provided for fractional ownership in common areas and facilities as follows:

> (a) Each Condominium Unit shall, as of the date of this
> Amendment, have an undivided 1/24 Fractional Interest in the
> Common Areas and Facilities, and each Condominium Unit will be
> responsible for a 1/12 Fractional Share of the Condominium Unit
> Common Expenses allocated to the Condominium Units in
> accordance with Section 3 of this Amendment;
> (b) Each Home Site shall, as of the date of this Amendment, have
> an undivided 1/6 interest in the Common Areas and Facilities, and
> each Home Site will be responsible for a 1/6 Fractional Share of
> the Home Site Common Expenses allocated to the Home Sites in
> accordance with Section 3 of this Amendment.

Exh. 8, § 7.

Plaintiffs relied on the Association's approval of the 2007 Amended Declaration, and pursuant to this reliance, they had expenses related to infrastructure for the planned six West Woods Homes, including engineering fees, legal fees to obtain permits, forest clearing, blasting and filing, sewer and electric, and a drive to access the West Woods Homes. At no time during permitting or construction did the Association or any owner raise a concern or objection regarding Plaintiffs' authority to apply for permits for the infrastructure or Plaintiffs' right to complete that work. The infrastructure, which continues to exist on the Association's common land, cost Plaintiff approximately $500,000. Exh. 13. Plaintiff mowed (until 2021) and paid

sewer fees (until 2022) for the West Woods Homes sites before and after the 2007 Amended Declaration was adopted. A 2021 appraisal determined that the value of the six-lot subdivision for the West Woods Homes, including the West Woods Homes Infrastructure, was $540,000 as of March 19, 2019.

On February 23, 2022, the Association approved a resolution (the "Recission") purporting to rescind the 2007 Amended Declaration and recorded the Recission on March 4, 2022. Exh. 10. The stated basis for the Recission is that the 2007 Amended Declaration required unanimous approval, and because it lacked such approval, it was void. The Recission does not reference the 1991 Amendment.

## Discussion

### 1. Count I: Declaratory relief regarding the validity of the 1991 Amendment

In Count I, Plaintiff seeks declaratory judgment that the 1991 Amendment is valid and effective between the parties. Defendant argues that it is entitled to summary judgment on Count I because the 1991 Amendment altered the undivided interest of each owner without the unanimous consent of all the owners. The parties cross-move for summary judgment on Count I.

As described above, at the time of the 1991 Amendment, Ghia had built 12 units and there were 12-unit owners, each with 1/12 interest. Under the terms of the Declaration, if the third phase of the development was complete, then each owner's share would reduce proportionately, with each owner having 1/24 interest when the number of units reached 24. Under the Declaration, Ghia had 7 years to complete construction of the additional buildings. If after 7 years, he had not completed construction, then the percentage ownership of each unit owner would become fixed. The 1991 Amended removed the 7-year limitation on construction.

Defendant argues that the 1991 Amendment "purported to change the permanency of the percentage of common areas in the event that the declarant did not complete all six buildings on or before March 11, 1995." Defendant's Motion for Summary Judgment at 4–5. "[I]n fact the amendment changed the allocation of common interests that would have become fixed on March 11, 1995, absent completion of additional units by the Declarant." Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment[1] at 1–2.

The Condominium Ownership Act (VCOA), 27 V.S.A. § 1301 et seq., governs the declaration and amendments at issue in this case. "Each apartment or site owner shall be entitled to an undivided interest in the common areas and facilities in the percentage expressed in the declaration." 27 V.S.A. § 1306(a). "The percentage of the undivided interest of each apartment or site owner in the common areas and facilities as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all of the apartment or site owners expressed in an amended declaration duly recorded." 27 V.S.A. § 1306(b). "Annually, the common profits of the property may be distributed among, and the common expenses shall

---

[1] Defendant's Reply incorporates its arguments from its Opposition to Plaintiff's Motion for Summary Judgment.

be charged to, the apartment or site owners according to the percentage of the undivided interest in the common areas and facilities." 27 V.S.A. § 1310.

The 1991 Amendment did not change the percentage of the undivided interest of each owner, it removed the temporal limitation on Ghia's right to add units, up to the maximum of 24 total. The formula for determining each owner's percentage of interest remained the same as in the original Declaration.

Defendant points to *Arapaho Owners Ass'n, Inc. v. Alpert* to support its interpretation that the 1991 Amendment altered the owners' percentage of undivided interest. 2015 VT 93, ¶ 21, 199 Vt. 553. In *Arapaho*, the Vermont Supreme Court held that "the common expenses are indeed assessed as part of the permanent property interest assigned in § 1306(b)," and therefore required unanimous decision. *Id.*, ¶ 20.

*Arapaho* noted that 27A V.S.A. § 2-117(d) was not one of the sections of the Vermont Common Interest Ownership Act (VCIOA) that applied to common interest communities built before 1999, but that the VCIOA "would lend support to our interpretation of the earlier Act." *Id.*, ¶¶ 20–21. Section 2-117(d) provides that:

> Except to the extent expressly permitted or required by other provisions of this title, no amendment may create or increase special declarant rights, increase the number of units, change the boundaries of any unit, or change the allocated interests of a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.

The VCIOA defines "allocated interests" in a condominium to include "the undivided interest in the common elements, the common expense liability, and votes in the association." 27A V.S.A. § 1-103(2)(A).

*Arapaho* holds that under the VCOA, unanimous consent is necessary to change the allocation of undivided interest in the common expense liability, but it does not extend the requirement of unanimous consent in the VCOA as broadly as section 2-117(d) of the VCIOA. Removing the time limit on building additional units arguably increased the declarant's rights, which would have required unanimous consent under the VCIOA, but that change does not require unanimous consent under the VCOA. Under the original declaration, the percentage of undivided interest of each unit owner has a "permanent character" not by virtue of a date at which it is fixed, but because of the fixed formula based on an even division of the number of units built, up to a maximum of 24 units. That formula did not change with the 1991 Amendment. Thus, each of the 12-unit owners at the time of the 1991 Amendment had 1/12 interest subject to the declarant constructing further units, which would proportionately dilute each unit's percentage of the undivided interest. The 1991 Amendment's removal of the original Declaration's 7-year time limit provisions did not require unanimous consent.

To the extent that the Court can discern, Defendant makes an additional argument regarding the specification of common elements in the declaration, and appears either to take

issue with the 1991 Amendment adding stain, appliances, light fixtures, kitchen and bathroom cabinets and trim to the Declaration, § 4, or with the fact that the 1991 Amendment would allow Ghia to build further units on common elements (the land). Defendant cites a portion of the Vermont Supreme Court's decision in *Watson v. Village at Northshore I Association, Inc.* for the proposition that unanimous approval was necessary to take common elements and enclose them within units. 2018 VT 8, ¶ 52, 207 Vt. 154. In *Watson*, an association without unanimous approval allowed individual unit owners to expand dormers into commonly owned airspace, thus reallocating common elements. *Id*. The 1991 Amendment added stain, appliances, light fixtures, kitchen and bathroom cabinets and trim to its explanation of what is included within a unit. None of these items would have been deemed common elements to begin with, and none would encroach into non-appurtenant common elements analogous to the dormers taking airspace in *Watson*. To the extent that Defendant's argument may be that the future additional units would be built on common elements (the land), and thereby diminish unit owners' rights as to those elements, this scenario differs from *Watson* in that the original Declaration already contemplated construction of up to a total of 24 units, and the 1991 Amendment did not alter that.

For the reasons discussed above, the Court denies Defendant's motion for summary judgment on Count I and grants Plaintiff's motion for summary judgment on Count I.

## 2. Count II: Declaratory relief regarding development rights

In Count II, Plaintiff seeks a judgment declaring that Plaintiff remains in possession of the development rights either pursuant to the 1991 Amendment, the 2007 Amendment, or otherwise. The parties cross-move for summary judgment on Count II.

The 2007 Amendment changed the fractional share of the existing 12-unit owners to 1/24 effective immediately, redesignated portions of the common areas as either condominium unit common areas or homes common areas, and delineated expenses as to those areas, allocating some expenses to the 12 condominium unit owners and some expenses to future West Woods Homeowners. This amounts to a reallocation of the unit owners' share of expenses. The 2007 Amendment therefore altered the percentage of undivided interest (and expenses) in a manner that under section 1306(b) and *Arapaho* required unanimous approval, which it did not have.

Plaintiff cites *Madowitz v. Woods at Killington Owners' Association* to support her theory that the 2007 Amendment did not impact ownership interests and therefore did not require unanimous approval. 2010 VT 37, ¶ 27, 188 Vt. 197. In that case, "[a]lthough the addition of each new unit divided the percentage interest in the same common areas among a greater number of people, there was no real or practical change in any unit owner's rights or expectations with respect to his use of the common areas or his own unit." *Id*. In this case, the unit owners' percentage of interest did decrease in the 2007 Amendment to 1/24, which was the lowest percentage contemplated by the original Declaration, but the relation of each condominium unit owner's interest changed in relation to the prospective West Woods Homeowners, who would have 4 times the percentage of interest compared to condominium unit owners. The percentage of responsibility for expenses would also change, as well as which common elements were attributable as expenses to condominium unit owners or West Woods Homeowners.

Plaintiff argues that the statute of limitations, 12 V.S.A. § 511, requires that Defendant had to file a challenge to the validity of the 2007 Amendment within six years. ("A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter."). Along those lines, Plaintiff also contends that Defendant's right to challenge the 2007 Amendment is barred under the equitable doctrine of laches. "Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right." *Stamato v. Quazzo*, 139 Vt. 155, 157 (1980).

Defendant argues that statutes of limitation and laches operate as a limitation to bring actions, but that Defendant did not bring this action—it is Plaintiff's claim for declaratory judgment that is at stake here. According to defendant, statutes of limitation and laches cannot apply here, "as Defendant has not commenced an action against Plaintiff." Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment at 4. Defendant's approach to this issue fails based on its own admission—it never commenced an action to challenge the amendment. If a statute of limitations or laches applies here, as Plaintiff argues, Defendant's opportunity to avoid the 2007 Amendment has lapsed.

The parties have spilled much ink on the question of whether, if Defendant is correct that the 2007 Amendment required unanimous consent, it was void ab initio or merely voidable. In *Watson*, the Vermont Supreme Court held that an amendment that impermissibly expanded the Association's access easement was void. *Watson*, 2018 VT 8, ¶ 23. The Court reads "void" in that context to refer to the result of a successful challenge to a voidable act—not an indication that the act was void ab initio.[2] Plaintiff contends that if the legislature had intended to make amendment not conforming with section 1306(b) void ab initio, it would have expressly included "such a draconian consequence" in the statute. *See Bilanko v. Barclay Court Owners Ass'n*, 375 P.3d 591, 595 (Wash. 2016). The Court agrees. The 2007 Amendment failed to comply with the COA's requirement of unanimous consent, rendering the 2007 Amendment voidable. Defendant took no action to challenge the noncompliant amendment until it attempted to rescind it in 2022.

Plaintiff argues that because a condominium declaration is a contract, the statute of limitations for contract actions applies. The Vermont case law that compares condominium declarations to contracts relates, however, to approaches to construing the language in declarations, *Highridge Condo. Owners Assn. v. Killington/Pico Ski Resort Partners, LLC*, 2014 VT 120, ¶ 14, 198 Vt. 44, and applying the implied covenant of good faith and fair dealing to the

---

[2] Plaintiff also points to examples where under Vermont law, contracts are voidable rather than void, even when commonly referring to such contracts as void. *See Irish v. Clayes*, 10 Vt. 81, 85 (1838) ("Contracts are frequently called *void,* which are only *voidable.* An infant's deed is called *void,* but it is only so when he shall have avoided it. A contract, in which one of the parties is defrauded, is said to be *void as to him,* but it is only so when *he* has avoided it. A usurious contract is called *void*; but it is only so, when it is *avoided* by the party, on whom the usury is practiced. The general rule of law is the same in all such cases, that is, where the contract is avoided, the parties are restored to their previously existing rights.").

parties' obligations under a declaration. *Watson v. Vill. at Northshore I Ass'n, Inc.*, 2018 VT 8, ¶ 58, 207 Vt. 154. Plaintiff points out that at least one other court has applied the statute of limitations for contract actions to an action for declaratory judgment challenging the legitimacy of an amendment. However, it is not apparent from the cited Vermont case law that the statute of limitations for contract actions, 12 V.S.A. § 511, would apply to a party's challenge to the legitimacy of the enactment of an amendment to a condominium declaration. To the extent that section 511 acts as a catch-all for civil actions that are not otherwise limited by another statute, it may apply here.

27A V.S.A. § 2-117(b) provides that "[n]o action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded." That section is not one that the legislature enumerated to apply to the older condominium at issue here. 27A V.S.A. § 1-204. It is possible that the relatively long limitation period in 12 V.S.A. § 501 applies here (15 years). Regardless of whether section 501 or the shorter limitation period of section 511 applies as a catch-all here, the limitation period for Defendant to file an action for declaratory relief to void the 2007 Amendment, which was recorded on December 28, 2007, expired before this action was filed.

Plaintiff argues that even if the limitation period had not yet expired, the doctrine of laches bars Defendant from claiming that the 2007 Amendment is void. Defendant counters that laches is merely an equitable defense that does not apply here, where Defendant is not asserting a claim against Plaintiff. "Laches is an equitable defense that bars relief when a party fails 'to assert a right for an unreasonable and unexplained lapse of time.'" *In re McCarty*, 2013 VT 47, ¶ 15, 194 Vt. 109 (quoting *Comings & Livingston v. Powell,* 97 Vt. 286, 293 (1923)). "Laches involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works disadvantage to another." *Id.* (quoting *Comings*, 97 Vt. at 294). Defendant appeared to align itself to Ghia's pursuit of the 2007 Amendment and did not object to the legitimacy of the passage of the amendment until it passed and recorded its 2022 recission, despite Plaintiff having pursued permits and begun infrastructural improvements on the West Woods Homes site. Plaintiff mowed the site and paid taxes related to it. The undisputed facts demonstrate that Defendant's delay in asserting its right to object to the 2007 Amendment prejudiced Plaintiff, who expended considerable resources building infrastructure for the West Woods Homes. However, Defendant's argument is that the 2007 Amendment contradicted the statutory requirement of unanimous consent for approval. Because this is essentially a legal, not an equitable, contention, laches does not apply. To the extent that Defendant's defense to Plaintiff's request for declaratory judgment, having failed to demonstrate that the amendment was void ab initio, impliedly seeks the effect of the equitable remedy of rescission of the 2007 Amendment, it is barred by the doctrine of laches. *See Sterrett Enters., Inc. v. Yankee Chapman, Inc.*, 146 Vt. 112, 115 (1985) (considering laches as defense to equitable claim for recission).

For the reasons discussed above, Plaintiff is entitled to summary judgment on Count II.[3] Defendant's motion for summary judgment on Count II is denied.

---

[3] The same result regarding the statute of limitations and laches applies to the 1991 Amendment, but as discussed above, the enactment of that amendment complied with the statute.

### 3. **Count III: Declaratory relief regarding Defendant's Recission**

In Count III, Plaintiff requests declaratory judgment stating, "that Defendant's purported Recission is invalid, null, and void *ab initio*, given that Defendant's basis for rescinding the 2007 Amended Declaration was invalid as a matter of law." Complaint, ¶ 37. In the alternative, if the rescission of the 2007 Amended Declaration was effective, Plaintiff requests a judgment stating that the Original Declaration, as amended in 1991, "remains in full force and effect and, therefore, that Plaintiff's Development Rights include the right to develop the originally-contemplated [sic] twelve units in three buildings in the locations set forth in the original Declaration, or at least such additional units in said location as are allowed under applicable zoning density laws." Complaint, ¶ 42. The parties cross-move for summary judgment on Count III.

Defendant's argument in favor of the validity of the recorded rescission is that it merely clarified the "misapprehension of the law" regarding the approval of the 1991 and 2007 Amendments, which according to Defendant were void ab initio. To begin with, the language of the Recission relates only to the 2007 Amendment. Exh. 10. It states that the 2005 Resolution (the procedure underlying the 2007 Amendment) was never valid and that it was not unanimously approved. The action performed by the Recission, although it recites legal conclusions about the 2005 Resolution and 2007 Amendment, is not to render legal conclusions regarding the prior procedure and amendment, but rather, it purports to rescind the amendment. If the 2007 Amendment was void ab initio, the recorded recission would indeed be moot. But the Court has decided, as discussed above, that the 2007 Amendment was voidable, rather than void. Thus, the operative question is not whether the recited statements about the 2005 Resolution procedure and the amendment are valid, but rather, whether the recorded recission effectively voids the 2007 Amendment from that point forward. Defendant does not provide a basis for its asserted authority to revoke Plaintiff's development rights. Therefore, Defendant fails in showing that Count III must fail.

Plaintiff contends that the recission is void and ineffective because it purports to terminate Plaintiff's development rights without Plaintiff's consent. Ghia had development rights pursuant to the Original Declaration, and the time constraint on exercising those development rights was effectively removed by the 1991 Amendment as discussed above. The 2007 Amendment altered those rights with regard to the nature of the construction of further units/homes/sites at Ghia's discretion. He had not sold those 6 sites at the time Defendant purported to approve the recission of the 2007 Amendment. Nothing in the VCOA or the Declaration gives Defendant the right to rescind Ghia or Plaintiff's rights to develop or to amend the Declaration in a manner that curtails or blocks Ghia or Plaintiff's development of the property. *See Highridge Condo. Owners Assn. v. Killington/Pico Ski Resort Partners, LLC*, 2014 VT 120, ¶ 16, 198 Vt. 44 ("Nothing in the declaration's provisions concerning the powers of the owners' association suggests that when the Association assumes the enumerated powers listed in the declaration, the Association also acquires the right to develop, or block development of the remaining units contemplated in the declaration."). The rescission is void. Plaintiff is entitled to summary judgment on Count III.

### 4. Count IV: Slander of title

Count IV alleges that Defendant's recording of the rescission in the land records is a publication of a false statement concerning Plaintiff's development rights, caused special damages to Plaintiff, and was done out of malice. The parties cross-move for summary judgment on Count IV.

"To prove slander of title, plaintiff must show that: (1) she has a 'transferrable ownership interest capable of disparagement,' (2) defendants published a false statement concerning plaintiff's title; (3) defendants acted with malice, and (4) the statement caused special damages." *Massucco v. Kolodziej*, 2024 VT 76, ¶ 26 (quoting *Sullivan v. Stear*, 2011 VT 37, ¶¶ 8, 11, 189 Vt. 442). "The essence of the tort is the publication of an assertion that is derogatory to the plaintiff's title to property in an effort to prevent others from dealing with the plaintiff." *Id*. ¶ 26 (quoting *Sullivan*, 2011 VT 37, ¶ 8 (quotation omitted)).

Defendant argues that at the time of the Rescission in 2022, Plaintiff did not have a transferrable ownership interest that could be disparaged. Because Plaintiff's development rights under the 1991 Amendment continued to exist, Plaintiff did have a transferrable ownership interest. However, Plaintiff's continued transferrable ownership interest under the 1991 Amendment was not disparaged in the Rescission, which stated that the 2005 Resolution and the 2007 Amendment were not valid and made no mention of the 1991 Amendment. Plaintiff also had a transferrable ownership interest—albeit one arguably susceptible to legal challenge— capable of being disparaged pursuant to the 2007 Amendment. The remainder of Defendant's argument regarding Count IV depends heavily on the assertion that it cannot have acted in malice when Plaintiff had no transferrable ownership interest because the 1991 and 2007 Amendments were not valid.

Plaintiff contends that the published statements were false. Even if that were undisputed, Plaintiff's support of the malice element falls short. According to Plaintiff, the Rescission directly conflicts with the opinion of Defendant's own attorney, upon whom both Plaintiff and Defendant relied. Exh. 6. That legal advice, which stated that a vote of 9 out of 12 owners was sufficient to approve a change in the declaration, was from February 11, 2005. Exh. 6. As discussed above, the 2007 Amendment required, contrary to the lawyer's advice in 2005, unanimous approval of the unit owners. The undisputed facts do not support the conclusion that due to Defendant's receipt of the legal advice in 2005, it acted maliciously when it recorded the rescission in 2022. Because Plaintiff cannot prove malice, her claim for slander of title must fail. Defendant is entitled to summary judgment on Count IV.

### 5. Count V: Negligence

Plaintiff alleges in Count V that "[u]nder Title 27A, Defendant has an ongoing duty to comply with its obligations under its governing documents, including a duty owing specifically to Plaintiff to allow development of the West Woods Homes in accordance with the 2007 Amended Declaration." Complaint, ¶ 49. According to Plaintiff, Defendant breached its duty by rescinding the 2007 Amendment. Defendant moves for summary judgment on this count,

arguing that it did not have a duty that could have been breached by the alleged acts, and thus, there is not cause of action here for negligence.

Plaintiff argues that the duty at stake is the implied covenant of good faith and fair dealing, reinforced by the duty under 27A V.S.A. § 1-113. That section provides that "[e]very contract or duty governed by this title imposes an obligation of good faith on all parties in its performance or enforcement." 27A V.S.A. § 1-113. Plaintiff has not shown that section 1-113 applies to the Declaration and amendments to it that are in question in this case. To the extent that Plaintiff articulates a separate claim for the breach of the implied covenant of good faith and fair dealing, the Court addresses that count below. Count V, however, does not articulate a negligence claim, and the undisputed material facts do not support a negligence claim. Defendant is entitled to summary judgment on Count V.

## 6. Count VI: Breach of Contract

Plaintiff alleges in Count VI that Defendant's attempted rescission of the 2007 Amendment constituted a breach of contract resulting in damages, including the loss of profit from the sale of the West Woods Homes, as well as $540,000 originally invested into the West Woods Homes infrastructure. The parties cross-move for summary judgment on Count VI.

The crux of Defendant's argument is that there is no breach of contract because the 1991 and 2007 Amendments were "illegal," and thus unenforceable. As discussed above, the 1991 Amendment comported with the VCOA, and the 2007 Amendment was not "illegal," it was voidable, and Defendant sat on its right to challenge it.

To prevail in a breach of contract claim, "the [p]laintiff must prove there was a contract, there was performance under the contract by [the p]laintiff, there was a breach of the contract by the [d]efendant, and [the p]laintiff was damaged as a result of the breach." *American Exp. Nat. Bank v. Kelsey*, No. 24-CV-02607, 2025 WL 888334, at *1 (Vt. Super. Ct. Mar. 5, 2025) (Burke, J.) (citing *Smith v. Country Village Inter., Inc.*, 2007 VT 132, ¶ 10, 183 Vt. 535). Here, the act constituting the alleged breach is not a failure to perform an obligation under the Declaration as amended, it is an act that allegedly blocked Plaintiff from exercising her rights under the Declaration as amended. As such, the act of rescinding the 2007 Amendment does not breach a term of the contract, but rather, is arguably one piece of a claim for the breach of the implied covenant of good faith and fair dealing. *See Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 3, 179 Vt. 167 (claim for breach of implied covenant of good faith and fair dealing must prove the breach of "an implied-in-law promise not to do anything to undermine or destroy plaintiffs' rights to receive the benefit of the parties' escrow agreement").

Additionally, Plaintiff fails to assert damages for harms that have occurred as the result of any breach. The resources she expended in preparing the infrastructure for the West Woods Homes have not been lost, because, as determined above, she still has rights to develop the project.

For the reasons stated above, Plaintiff's breach of contract claim must fail. Plaintiff is not entitled to summary judgment on Count VI, and the Court will issue summary judgment for Defendant on Count VI.

### 7. Count VII: Breach of the implied covenant of good faith and fair dealing

Plaintiff alleges in Count VII that Defendant owed Plaintiff a duty of good faith and fair dealing in accordance with the Declaration and 2007 Amendment. According to Plaintiff, Defendant breached that duty by rescinding the 2007 Amendment and failing to compensate Plaintiff for the loss of profit from the sale of the West Woods Homes and the loss of funds invested in the West Woods Homes infrastructure. Defendant moves for summary judgment on Count VII.

Defendant's argument is that Plaintiff makes no showing of any breach of the implied covenant of good faith and fair dealing with respect to the terms of the Original Provision. Turning to the 2007 Amendment, Defendant's sole argument is that the terms of the 2007 Amendment are not enforceable, and therefore Plaintiff cannot succeed in proving that Defendant interfered with any right Plaintiff asserts that she has under the 2007 Amendment. As discussed above, Plaintiff's rights under the 2007 Amendment are not unenforceable, because Defendant failed to challenge the amendment's procedure in a timely manner.

The Vermont Supreme Court has described the contours of a claim for the breach of the implied covenant of good faith and fair dealing as follows:

> The covenant of good faith and fair dealing is implied in every contract. *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993). Thus, "[a] cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractual relationship between the parties, but breach of that underlying contract is not necessary before bringing a tort action under the covenant." *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 54 n.5, 179 Vt. 167 (citation omitted). We have explained that the covenant acts to protect the parties to a contract, and to ensure that they "act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Carmichael*, 161 Vt. at 208 (quotation omitted). The covenant's protection does not extend simply to actions taken in fulfillment of a contract, but also actions taken in terminating a contract and winding up the contractual relationship between the parties. *Id*. at 210. The covenant likewise "covers not only contract performance, but also contract enforcement," including "settlement and litigation of contract claims and defenses." *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 61, 198 Vt. 137 (quotation omitted). The covenant of good faith and fair dealing "is violated by dishonest conduct such as conjuring up a pretended

> dispute, asserting an interpretation contrary to one's own
> understanding, or falsification of facts." *Id.*
>
> A breach of the covenant may be shown by evidence that a party to
> a contract acted in such a way as to "violate[ ] community
> standards of decency, fairness or reasonableness, demonstrate[ ] an
> undue lack of diligence, or [take] advantage of [other parties']
> necessitous circumstances." *Monahan*, 2005 VT 110, ¶ 3, 179 Vt.
> 167. A party may collect punitive damages under the covenant
> where the party can show that the other party acted with actual
> malice. *Id.* ¶ 54 n.5. "Actual malice may be shown by conduct
> manifesting personal ill will, evidencing insult or oppression, or
> showing a reckless or wanton disregard of plaintiff's rights." *Id.* ¶
> 4 (quotation omitted). Where a party alleges both breach of
> contract and breach of the implied covenant of good faith and fair
> dealing, dual causes of action are permitted only where the
> different actions are premised on different conduct—"we will not
> recognize a separate cause of action for breach of the implied
> covenant of good faith and fair dealing when the plaintiff also
> pleads a breach of contract *based upon the same conduct*." *Id.* ¶ 54
> n.5 (emphasis in original).

*Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶¶ 32–33, 209 Vt. 244 (citations edited). The record does not support the conclusion that attempting to rescind the 2007 Amendment was not a good faith action on Defendant's part upon realization that the procedure to enact the amendment was flawed. Defendant is entitled to summary judgment on Count VII.

## 8. Count VIII: Unjust Enrichment/Quantum Meruit

In Count VIII, Plaintiff alleges that she conferred a benefit on Defendant by installing the infrastructure for West Woods Homes, which Defendant accepted. According to Plaintiff, it would be inequitable for Defendant to retain that benefit and not compensate Plaintiff for it, since Defendant rendered the infrastructure worthless to Plaintiff by recording the rescission in the land records. The parties cross-move for summary judgment on Count VIII.

"Under the doctrine of unjust enrichment, a party who receives a benefit must return the benefit if retention would be inequitable." *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 68, 218 Vt. 144 (quoting *Kellogg v. Shushereba*, 2013 VT 76, ¶ 22, 194 Vt. 446 (quotation and alteration omitted)). "To succeed on a claim for unjust enrichment, a "plaintiff must prove that (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Id.* (quoting *Center v. Mad River Corp.*, 151 Vt. 408, 412 (1989).

It is undisputed that Plaintiff pursued permitting and installed infrastructure for the West Woods homes, and that Defendant made no objection to the construction until the approval and

recording of the rescission in 2022. Defendant asserts that none of the infrastructure benefits the members of the Association but provides no reference to evidence in the record that the Association does not benefit from the improvements. Defendant argues that it has no plan to use the infrastructure, but that does not rule out the possibility that the infrastructure is a benefit. But this is not the reason why the claim cannot succeed. There is no unjust enrichment (or quantum meruit) because, as discussed above, Plaintiff retains development rights. Defendant is accordingly entitled to summary judgment on Count VIII, and Plaintiff's cross-motion is denied on that count.

### 9. **Count IX: Promissory Estoppel**

In Count IX, Plaintiff alleges that Defendant reasonably expected to induce Plaintiff's action by approving the 2007 Amendment, then acquiescing as Plaintiff installed the West Woods Homes infrastructure. Plaintiff alleges damages due to her detrimental reliance on Defendant's allegedly broken promise. Defendant moves for summary judgment on Count IX.

"A plaintiff must show the following for a promissory estoppel claim: "(1) defendant made a promise to [the promisee] that defendant should have reasonably expected to induce action or forbearance; (2) [the promisee] relied on the promise to [the promisee's] detriment; and (3) injustice can be avoided only by enforcement of the promise." *Dewdney v. Duncan*, 2025 VT 26, ¶ 25 (quoting *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 11, 214 Vt. 269). Defendant argues that it did not act in such a way that would reasonably be construed as a promise to induce Plaintiff to begin building the infrastructure for the West Woods Homes. At best, that element is based on disputed facts. More crucially, there is no cause of action for promissory estoppel when the parties' relationship is governed by a contract, as it is here. *See id.*, ¶ 24 ("When a dispute arises out of a contract, promissory estoppel is inapplicable."). Defendant is entitled to summary judgment on Count IX.[4]

### 10. **Count X: Betterments**

In Count X, Plaintiff alleges that while in possession of Defendant's property, Plaintiff increased the value of the property by installing the West Woods Homes infrastructure. Further, Plaintiff alleges that the 2022 rescission acted to eject Plaintiff from Defendant's property, causing Plaintiff to suffer the loss of profit and to render the $540,000 invested into the infrastructure worthless to Plaintiff. Defendant moves for summary judgment on Count X.

Defendant contends that 12 V.S.A. § 4811 provides for a counterclaim for betterments for the value of improvements made upon the land when a party is ejected from it. Because Plaintiff is not a lessee and Defendant did not seek a judgment of ejectment, Defendant argues there can be no claim for betterments.

---

[4] This ruling is contingent upon the Court's determine, above, that the 2007 Amendment, despite flawed procedure, was in effect when Plaintiff undertook the actions such as pursuing permits and building infrastructure.

Plaintiff counters that the statutory counterclaim for betterments in ejectment actions does not preempt or otherwise extinguish the equitable principles of betterments. *See Whitney v. Richardson*, 31 Vt. 300, 306–07 (1858) ("The right of the occupant to recover the value of his improvements, does not depend upon the question whether the real owner has been vigilant or negligent in the assertion of his rights. It stands upon a principle of natural justice and equity, viz: that the occupant in good faith, believing himself to be the owner, has added to the permanent value of the land by his labor and his money, is in equity, entitled to such added value, and that it would be unjust, that the owner of the land should be enriched by acquiring the value of such improvements without compensation to him who made them. This principle of natural justice has been very widely, we may say universally, recognized. It was a doctrine of the civil law; it has been adopted and enforced in courts of equity."). Regardless of whether the claim is based on the governing statute or ancient principles of equity, Plaintiff has not been ejected from the property. As discussed above, the rescission is void and therefore cannot act to eject Plaintiff from the property. Further, even if the rescission was effective, or if the 2007 Amendment was voided, Plaintiff still had rights to possess and build in accordance with the Declaration as amended in 1991. Defendant is entitled to summary judgment on Count X.

## Order

For the reasons stated above, the Court grants Defendant's motion #4 for summary judgment with regard to Counts IV (slander of title), V (negligence), VI (breach of contract), VII (breach of the implied covenant of good faith and fair dealing), VIII (unjust enrichment/quantum meruit), IX (promissory estoppel), and X (betterments), and denies Defendant's motion for summary judgment with regard to Counts I, II, and III.

The Court grants Plaintiff's motion #2 for summary judgment with regard to Counts I (declaratory judgment with regard to the 1991 Amendment), II (declaratory judgment with regard to Plaintiff's development rights), and III (declaratory judgment with regard to the attempted rescission), and denies Plaintiff's motion for summary judgment with regard to Counts IV, VI, and VIII.

Defendant's motion #4 Summary Judgment
Count I  DENIED
Count II DENIED
Count III DENIED
Count IV GRANTED
Count V GRANTED
Count VI GRANTED
Count VII GRANTED
Count VIII GRANTED
Count IX GRANTED
Count X GRANTED

Plaintiff's motion #2 for Summary Judgment
Count I GRANTED
Count II GRANTED
Count III GRANTED
Count IV DENIED
Count VI DENIED
Count VIII DENIED

Dated December 18, 2025.

Electronically signed pursuant to V.R.E.F. 9(d).

_____

Kerry A. McDonald-Cady, Superior Court Judge

Vermont Superior Court
Filed  12/19/25
Windsor Unit